LORI ROWE *et al.*, Plaintiffs-Appellants, v. STATE BANK OF LOMBARD *et al.*, Defendants-Appellees.

Second District   No. 2—92—0758

Opinion filed August 9, 1993.

Brian J. Diamond and Edward J. Walsh, Jr., both of Walsh, Knippen, Knight & Diamond, of Wheaton (Thomas L. Knight, of counsel), for appellant Lori Rowe.

Walter P. Maksym, Jr., of Walter P. Maksym & Associates, of Oak Brook, for appellant Andrew Serpico.

Thomas R. Weiler, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton (John E. Norton, of counsel), for appellees.

JUSTICE McLAREN delivered the opinion of the court:

This appeal arises from a negligence action filed by plaintiffs, Lori Rowe and Andrew Serpico, for the wrongful death and personal injuries occurring to decedent and Rowe while on property owned and managed by defendants. A jury in the Du Page County circuit court rendered a verdict for defendants. On appeal, plaintiffs argue that the trial court erred (1) by refusing to give plaintiffs' jury instructions on the matter of duty and proximate cause; (2) by allowing a third party's admission into evidence; (3) by failing to exclude hearsay statements which did not qualify as exceptions to the hearsay rule; and (4) by allowing defendants to dismiss their contribution claim at the close of evidence. We reverse and remand.

Shortly before midnight on the evening of April 23, 1978, Lori Rowe arrived at the M-2 service center to begin her night shift as a key punch operator. She was met by her co-worker and supervisor, Bonnie Serpico, who had arrived earlier and was already in the building. Serpico admitted Lori through a locked door.

At approximately 4 a.m., James Free entered the building through a door which opened directly into the office space. Free encountered Rowe and Serpico, held them at gunpoint, tied Rowe's hands behind her back, and led Serpico into another room. The women struggled to escape. Free shot both of them, and then he fled from the building. Serpico died as a result of her injuries. Rowe sustained serious injuries. Subsequently, Free was arrested, tried, and sentenced to death.

The M-2 service center is located at the Glen Hill Office Park, in Glen Ellyn. This office park contains eight separate commercial office buildings. The office space was leased from Paramount, which held beneficial interest to the property under a land trust. The State Bank of Lombard held title to the property and served as trustee.

Rowe, along with Serpico's estate, brought an action against defendants for damages resulting from a breach of the duty defendants had undertaken with respect to providing security measures for the office park. The complaint alleged, among other things, that defendants (1) undertook and covenanted to keep the locks and doors on its property in repair; (2) provided keys for the exclusive use of the lessees; (3) maintained and controlled master and grand master keys capable of opening all the doors on the office park property; (4) investigated and authorized modification of its lock and master key system; (5) purchased and obtained possession of materials and lock parts which would render unaccounted for master keys inoperable; (6) failed to maintain proper control over those in possession of master keys or grand master keys; (7) failed to install locks for new tenants which would prevent access by past tenants; (8) failed to notify decedent and others that master and grand master keys were outstanding and unaccounted for; and (9) proximately caused the plaintiffs' damages through their negligent acts.

Defendants filed motions for summary judgment. The trial court granted defendants' motions for summary judgment pointing out that defendants were under no duty to protect the plaintiff from the criminal actions of James Free. We affirmed this decision, but the supreme court reversed and concluded that there were questions of fact with respect to certain matters which would give rise to the creation of a duty which could lead to a judgment favoring plaintiffs if the breach of such a duty proximately caused plaintiffs' damages. (*Rowe v. State Bank* (1987), 153 Ill. App. 3d 788; *Rowe v. State Bank* (1988), 125 Ill. 2d 203.) Specifically, our supreme court held the summary judgment to be improper where circumstances created "a triable issue of fact as to whether the danger of criminal conduct by individuals possessing passkeys was sufficiently probable and predictable to create a duty upon the defendants to take reasonable precautionary measures, and whether their failure to do so was a proximate cause of the plaintiffs' damages." (*Rowe*, 125 Ill. 2d at 228.) The facts presented at trial which led to the instant appeal will be discussed at greater length in the context of addressing the issues raised by plaintiff.

Plaintiffs first argue that the trial court erred in refusing to give plaintiffs' tendered duty instructions. Plaintiffs' instruction No. 14 read:

"If you find that, prior to April 24, 1978, the defendants were aware, or in the exercise of ordinary care should have been aware, of a risk of unauthorized entries into the Glen Hill Office Park buildings by persons using outstanding and unac-

counted for master or grand master keys, then the court advises you that the defendants also had a duty to either warn the plaintiffs of that risk or to take reasonable precautions to prevent such unauthorized entries."

The trial court refused plaintiffs' instruction and, instead, accepted IPI Civil 2d No. 10.04, which instructed the jury:

"[I]t was the duty of defendants, before and at the time of the occurrence, to use ordinary care for the safety of the plaintiffs. That means it was the duty of the defendants to be free from negligence." See Illinois Pattern Jury Instructions, Civil, No. 10.04 (2d ed. 1971) (hereinafter IPI Civil 2d).

The determination of proper jury instructions lies within the discretion of the trial court, and the exercise of such discretion will not be disturbed on review unless it has been clearly abused. (*Villa v. Crown Cork & Seal Co.* (1990), 202 Ill. App. 3d 1082, 1087.) Jury instructions should be sufficiently clear to avoid misleading the jury, and they should fairly and correctly state the law. (*Villa*, 202 Ill. App. 3d at 1087-88.) According to Supreme Court Rule 239: "[T]he IPI instruction *shall* be used, unless the court determines that it does not accurately state the law." (Emphasis added.) (134 Ill. 2d R. 239(a).) In light of applicable case law and the language used by our supreme court in *Rowe*, we determine that the trial court did not abuse its discretion when it accepted defendants' tendered IPI duty instruction rather than plaintiffs' tendered duty instruction.

The instruction tendered by plaintiffs is phrased in such a way that the existence of defendants' duty is made dependent upon the finding of certain facts. However, the earlier supreme court decision in *Rowe* does not indicate that this expression of a conditional duty is warranted. According to *Rowe*, "[w]hether under the facts of the case there is a relationship between the parties as to require that a legal obligation be imposed upon one for the benefit of another is a question of law to be determined by the court." (*Rowe*, 125 Ill. 2d at 215.) After making this statement of law, the *Rowe* court devoted significant attention to the question which asks whether, under the circumstances of the case, a duty existed. (*Rowe*, 125 Ill. 2d at 217.) The *Rowe* court does *not* analyze the duty as one which is conditioned upon finding certain facts.

The *Rowe* court initially rejects several arguments plaintiffs made with respect to the attachment of a duty. For example, the court rejected plaintiffs' argument that security measures voluntarily undertaken were negligently performed and that the parties in control of

the building failed to maintain the premises in a reasonably safe condition.

However, the court does determine that a duty existed in light of the following facts. James Free, who was formerly employed in the office park, had access to master and grand master keys to all of the buildings in the office park. In addition, witnesses saw Free on the premises entering a locked door one day prior to the murder. Finally, in response to Rowe's call for help after the murders, the police were forced to break the door down when they came to assist Rowe. This evidence supported plaintiffs' theory that Free used a key to gain entry into the office that night.

Robert Davis was the building engineer for the Glen Hill Office Park at the time of the assault and murder. In an affidavit, Davis indicated that he obtained authorization to purchase parts to rekey all the locks in the complex because he was concerned about the number of outstanding and unaccounted for master and grand master keys to the building. However, before the parts could be installed, ownership of the office park was transferred from Leland Stahelin to Paramount. Davis was instructed by the former owner not to use the parts to carry out the rekeying. Davis testified that he informed the new owners about his concerns, but his request to rekey the locks was rejected because it would cost approximately $2,500.

Moreover, 17 incidents of criminal activity occurred in the office complex during the two years preceding the assault on Rowe and Serpico. These incidents, which included theft and burglary, had been the subject of investigation by the Glen Ellyn police department. Two of the incidents showed no sign of forced entry, prompting a detective to inform a building manager that the locks should be changed.

The supreme court accepted plaintiffs' argument that Paramount, by retaining access to the individual office units and manufacturing master and grand master keys to facilitate entry, *assumed a duty* to take reasonable precautions to prevent unauthorized entries by individuals possessing those keys. (*Rowe*, 125 Ill. 2d at 221.) The court asserted that plaintiffs "had a right to rely upon Paramount and its agents to exercise reasonable care over who was given keys and to take preventive measures to ensure that individuals who were given keys would not make unlawful use of them." (*Rowe*, 125 Ill. 2d at 222.) The court also determined:

> "Fennessey [the office park manager] had a duty either to warn those rightfully on the premises of the danger or to take reasonable precautions to prevent foreseeable unauthorized entries by those with a master or grandmaster key. [Citations.]

Having failed to do so, [defendants] breached their duty and can be held responsible for the reasonably foreseeable criminal acts of third persons which are proximately caused by their negligence." (*Rowe*, 125 Ill. 2d at 223.)

Thus, the summary judgment granted below was reversed because of a material issue of fact as to the breach of this duty and the damages proximately caused by the breach.

■ In its holding, the supreme court in *Rowe* made the following statement:

"We judge that the circumstances here create a triable issue of fact as to whether the danger of criminal conduct by individuals possessing passkeys was sufficiently probable and predictable to create a duty upon the defendants to take reasonable precautionary measures, and whether their failure to do so was a proximate cause of the plaintiffs' damages." (*Rowe*, 125 Ill. 2d at 228.)

This language could be interpreted as indicating that there was a question of fact as to whether a duty existed. However, in light of a long line of cases interpreting and applying *Rowe* as a case standing for the proposition that the existence of a duty is a question of law, we cannot say that *Rowe* intended to create a conditional duty the existence of which required the finding of certain facts. (*Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 411; *Hill v. Chicago Housing Authority* (1992), 233 Ill. App. 3d 923, 929; *Lutz v. Goodlife Entertainment, Inc.* (1990), 208 Ill. App. 3d 565, 568; *Almendarez v. Keller* (1990), 207 Ill. App. 3d 756, 759; *Jones v. Chicago Transit Authority* (1990), 206 Ill. App. 3d 736, 739; *Wasserman v. City of Chicago* (1989), 190 Ill. App. 3d 1064, 1066.) None of these cases in any way supports a determination that the *Rowe* court intended the existence of a duty to be conditioned upon the finding of certain facts. Moreover, our supreme court itself cites *Rowe* for the proposition that a summary judgment is proper and no recovery is possible as a matter of law where plaintiffs fail to show evidence from which the court can infer the existence of a duty. (*Vesey*, 145 Ill. 2d at 411.) Thus, the plaintiffs in *Rowe* must have shown sufficient evidence to support the existence of a duty because, if they had not, our supreme court would have affirmed the summary judgment granted below. *Vesey* does not indicate that *Rowe* intended to create a special conditional duty on the finding of certain facts.

With these decisions in mind, we cannot now say that the *Rowe* court intended to create a duty only if certain facts were found by the

jury. Therefore, we determine that the trial court did not abuse its discretion by refusing plaintiffs' tendered duty instruction.

■ Plaintiff next argues that the trial court erred when it refused plaintiffs' jury instruction No. 17 on the issue of proximate cause. This instruction read as follows:

"Conduct of the defendants which facilitates the criminal acts of a third person may be a proximate cause of injuries resulting from those criminal acts if the acts are within the scope of a reasonably foreseeable risk known to the defendants, even if what exactly could develop and the extent of the injuries or loss therefrom are not foreseeable."

Plaintiffs argue that this instruction was mandated by our supreme court in *Rowe*.

Defendants argue that *Rowe* did not mandate the tendering of this instruction, that plaintiffs failed to demonstrate the inadequacy of the IPI instruction on proximate cause, and that the instruction, therefore, was unnecessary. We agree with defendants on this issue.

The sole issue confronting the court in *Rowe* was whether the trial court erred in granting summary judgment to defendants on the ground that defendants owed no duty to plaintiffs as a matter of law. The court only tangentially addressed the issue of proximate cause. We cannot say that such treatment rendered the long form IPI instruction on proximate cause inadequate. The instruction given read as follows:

"When I use the expression 'proximate cause,' I mean [that] [a] [any] cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]"

In our view, this instruction adequately instructs the jury on the matter of proximate cause.

■ Plaintiffs next argue that the trial court erred in allowing defendants to introduce into evidence admissions made by Free which resulted from Free's failure to answer defendants' Rule 216 request. (134 Ill. 2d R. 216(a).) Plaintiffs assert that Free's admissions should not have been admitted against them but rather against Free himself. Plaintiffs also assert that the court improperly advised the jury of the nature and weight of the admission evidence. Initially, Free had been involved in the case as a direct defendant. However, plaintiffs dismissed their action against Free prior to trial. Defendants subse-

quently filed an action seeking contribution from Free, thus bringing him back into the case as a third-party defendant.

On May 7, 1984, defendants sent Free a request to admit facts. The facts requested to be admitted were as follows:

> "The admissions are that James P. Free admits he did not have in his possession any keys which could open any of the doors of any office buildings or offices located in the Glen Hill Office Park, Glen Ellyn, Illinois on or about April 24, 1978;

> That James P. Free admits he did not use any key to gain entrance to Building No. 1, Glen Hill Office Park, when he entered that building on or about April 24, 1978.

> James P. Free admits that the outside entrance door to Building No. 1 of the Glen Hill Office Park was unlocked when he first tried to open it and entered the building when Bonnie Leanne Serpico and Lori Rowe were inside on April 24, 1978."

Free never responded to this request. However, on July 13, 1984, plaintiffs' attorney made a similar request of Free which asked Free to admit that he *did* have keys in his possession which he used to gain entrance into the building. Free specifically denied plaintiffs' request. Over plaintiffs' objection, the trial court held that Free's admissions may be used by any party to the action other than Free himself and that the plaintiffs' action in nonsuiting Free as a direct defendant did not affect the admissibility of the admissions because they are relevant to the issues between the remaining parties and the action in chief.

On the last day of evidence, the court permitted defendants' attorney to read a statement that James Free admitted he did not have a key in his possession, did not use a key to gain entry, and that he entered through an unlocked door on the night of the crime. The judge advised the jury that these admissions were made by operation of law. At the instructions conference, which was held on the same day, defendants dismissed their contribution claim against Free. Over plaintiffs' objection, the trial court allowed the dismissal, denied plaintiffs' motion for a mistrial, and did not instruct the jury as to the nature of Free's admission.

According to Supreme Court Rule 216:

> "A party may serve on any other party a written request for the admission by the latter of the truth of any specified relevant fact set forth in the request.

> \*\*\*

> \*\*\* Each of the matters of fact and the genuineness of each document of which admission is requested is admitted unless,

within 28 days after service thereof, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part. \*\*\*
\*\*\*

\*\*\* Any admission made by a party pursuant to request under this rule is for the purpose of the pending action \*\*\*. It does not constitute an admission by him for any other purpose and *may not be used against him* in any other proceeding." (Emphasis added.) (134 Ill. 2d Rules 216(a), (c), (e).)

In our view, Rule 216 is intended to apply to situations where the party makes an admission which is then used against *him* in the pending action. (134 Ill. 2d R. 216(e).) We have found no cases which would indicate otherwise.

In the present case, two separate Rule 216 requests were made of Free. Thus, Free's denial of the request made by plaintiffs could be used by plaintiffs in the context of the dispute between plaintiffs and Free, and Free's absence of a denial with respect to defendants' request could be used in the context of the contribution claim. However, defendants could not use Free's admissions against plaintiffs. While Free's admissions could be used for impeachment purposes, the trial court should not have admitted them substantively against the plaintiffs. See *Rusher v. Smith* (1979), 70 Ill. App. 3d 889 (where a defendant was permitted to use a codefendant's admission as impeachment of the codefendant, but not as substantive evidence in defendant's defense).

Defendants argue that they should be allowed to use Free's admission against plaintiffs because there is no express provision in Rule 216 requiring adversity between parties before an admission can be received into evidence. Thus, defendants wish us to interpret the term "party" as it is used in Rule 216 such that *any* party's admission can be used against any other party. We cannot accept this interpretation of Rule 216, and defendants fail to cite a case to persuade us otherwise. The simple fact that any party may request an admission does not mean that the admission can then be used *against any* other party.

A party cannot submit a request for an admission to himself. The dangers of such an absurd situation are readily apparent. Likewise, a

party should not be able to solicit an admission from a similarly aligned party. In the present case, Free and defendants are similarly aligned in that plaintiffs seek to place fault upon both by establishing that Free committed the crimes using a key which he had in his possession as a result of defendants' negligence. Thus, if Free made Rule 216 admissions to defendants, those admissions may only be used in the contribution claim between Free and defendants.

We believe the language in Rule 216(e) supports our decision. Subsection (e) discusses the effect of an admission and addresses the proceedings in which an admission can be used. The rule states that a party's admissions cannot be used *"against him"* in any other proceedings besides the instant one. This language is consistent with our interpretation that an admission is to be used against the party who made it and not against other parties in the suit.

In the present case, a third-party plaintiff obtains an admission from a contribution defendant, dismisses that contribution defendant and then uses the admission against the principal plaintiffs. We do not deem these maneuvers to be within the ambit of Rule 216. If we allowed such to occur, then the parties opposing a plaintiff (or a defendant) could obtain admissions from each other and then use those admissions to their benefit against the party they mutually oppose. According to the historical and practice notes:

> "[T]he request to admit should be used to obviate the necessity of proof of facts as to which there is no real dispute, such as delivery of a deed or ownership of property. Using it to blanket the case and to cover matters that are fairly disputed is a waste of the time of counsel for both sides and the court." (Ill. Ann. Stat., ch. 110A, par. 216, Historical & Practice Notes, at 366 (Smith-Hurd 1985).)

The facts regarding Free's entry into the office building are fairly in dispute and should not have been the subject of a Rule 216 admission request.

In addition, a party waives his right to rely on an admission if he introduces evidence on the issues which would be controlled by the admissions. (*People ex rel. Reynolds v. Aldridge* (1982), 107 Ill. App. 3d 679.) Thus, notwithstanding the admission's invalidity for the reasons outlined above, defendants waived their right to use the admission because they introduced other evidence that Free entered the office building through an unlocked door. For example, on cross-examination of a detective who arrested Free, defense counsel elicited testimony which indicated that, on the night of his arrest, Free did not have in his possession a key to the office complex.

We may reverse a trial court's ruling on matters relating to Rule 216 admissions if the court abused its discretion. (See *Smoot v. Knott* (1990), 200 Ill. App. 3d 1082.) In our view, the trial court abused its discretion in allowing Free's admissions to be used against plaintiffs.

■■ Plaintiffs next assert error because the trial court admitted hearsay statements into evidence. The statements were made by Free to a fellow prisoner (Gillen) in the Du Page County jail. Gillen testified at trial that Free initially denied committing the crime. However, the inmates had heard about the crime on television, and one of the inmates said he was related to one of the victims and that Free had better talk. Gillen acknowledged that he swore at Free and called him a liar when Free had initially denied knowledge of the crime. According to Gillen, Free then asserted that the door he used to enter the building was unlocked and that he did not use a key to gain entrance. According to Gillen, Free claimed that the crime was not planned and that he had been high on drugs at the time.

At trial, plaintiffs filed a motion *in limine* to exclude any part of the evidence deposition or trial testimony of Gillen with respect to the statements allegedly made by Free. The trial court found the statements made by Free to Gillen to be admissible because they constituted party admissions or, alternatively, because they amounted to hearsay exceptions as declarations made against penal and financial interests.

Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted in court and is generally inadmissible unless it falls within a hearsay exception. (*People v. Lawler* (1991), 142 Ill. 2d 548, 557.) Free's statements to Gillen were clearly hearsay because they were offered to prove that a key was not used to gain entry into the office complex. However, if the statements amounted to admissions of a party opponent, then they are principal exceptions to the hearsay rule and consequently are admissible *against their maker* unless barred by other evidentiary considerations. (*People v. Bryant* (1976), 36 Ill. App. 3d 298, 300.) An out-of-court statement made by a party which tends to establish or disprove a material fact is admissible in evidence *against that party*. (Emphasis added.) *Stephenson v. Dreis & Krump Manufacturing Co.* (1981), 101 Ill. App. 3d 380, 385; *Jones v. DeWig* (1974), 25 Ill. App. 3d 423.

In the present case, defendants attempted to use Free's admission for their own benefit. Thus, Free's admission is affecting the interests of plaintiffs as if plaintiffs, themselves, had made the ad-

mission. Generally, it is improper to use an admission in such a way as to affect those not in privity with the maker. See *Belfield v. Coop* (1956), 8 Ill. 2d 293 (applies this principle in the context of an estate distribution).

The trial court alternatively determined the statements to be hearsay exceptions because they qualified as declarations against interest. We determine that this characterization is equally flawed. In order for a declaration against interest to qualify as an exception to the hearsay rule, the declarant (1) must be excusably unavailable at the time of trial; (2) must have possessed competent knowledge of the facts about which this declaration was made; (3) must have been against his pecuniary interest; and (4) must have had no motive to falsify his statement. *Seward v. Griffin* (1983), 116 Ill. App. 3d 749, 758.

In our view, we cannot say that there were no motives which compelled Free to falsify his statement. Gillen testified that Free was reluctant to come forward with or to admit that he committed the crime. According to Gillen, Free only came forward with details of the crime after some prodding by fellow inmates. From this testimony, it is apparent that Free was not eager to accept responsibility for the crime. He had been arrested and knew his liberty was at stake. Free could have continued to proclaim his innocence, but he did not. This indicates that the circumstances under which Free told his story were not highly conducive to truth or accuracy. Free may have decided that his fellow inmates would not accept his professions of innocence. Therefore, he chose to accept responsibility for the act but reduced his culpability by claiming a lack of intent resulting from a drug-induced state. Free's claim that he passed through an unlocked door would be consistent with this factual scenario. Thus, we cannot say that there was *no* probable motive to falsify the facts declared.

Likewise, Free's claim that he was drugged and did not use a key to gain entry would be a mitigating factor in his upcoming trial, if he believed he would be convicted. A statement made with a view towards establishing intoxication as a defense or as mitigation may not necessarily be one which is against the speaker's pecuniary interest. (*Jones*, 25 Ill. App. 3d at 426.) Free's claim that he did not use a key is consistent with a mitigating defense because it shows that he did not specifically intend to enter the building unlawfully and commit this crime. Therefore, we cannot say that Free's declarations were necessarily against his interest. Thus, it

was error for the trial court to admit this testimony as a hearsay exception.

Finally, we note that Free's unavailability was not discussed by either party on appeal. However, it is a requirement which must be met in order to admit Gillen's testimony. Thus, our ruling will not be based on this particular issue.

■■ Plaintiffs next argue that the trial court erred in allowing hearsay evidence to be admitted as to matters concerning Robert Davis' credibility. Based upon our reversal and the possibility of a retrial, we will consider the merits of these evidentiary issues for the sake of judicial economy, although they do not serve as the basis for our reversal.

In August 1976, ownership of the Glen Hill Office Park was transferred from Leland Stahelin to Paramount. In connection with that transfer, Todd Fennessey was promoted from lead office manager to office park manager. Davis retained his position as building engineer in charge of general maintenance, heating, air conditioning, electricity, etc. After the transfer, Davis reported to Fennessey on a day-to-day basis rather than to the building owner, as he had previously done. Martin Panek was Fennessey's superior and served as the general property manager under the new ownership. Defendants presented testimony of Stahelin and Panek in order to attack Davis' credibility by showing that he was dismayed about the change in ownership and upset about his position in the organization. The central purpose of this testimony was to bring forth information about Davis' prejudice or bias. Davis was an important witness for plaintiffs because his testimony tended to establish that defendants knew that the building needed to be rekeyed.

At trial, defense counsel asked Stahelin if he and Fennessey ever discussed Davis' attitude towards Fennessey after the sale of the property. Over plaintiffs' objection, the court allowed the testimony, ruling that "it goes to the state of mind as to Todd Fennessey as to the relationship he was having with Robert Davis which goes to the interest, bias, prejudice Robert Davis might have." Stahelin responded in the following manner:

> "He was—there was [sic] some problems that Bobby was having with the management of—the new management, and they had made him promises and different things like that; and so Bobby became quite upset, I guess, with this situation.
>
> I think there was [sic] some promotions he was supposed to get at one time or other and they didn't develop the way

Bobby felt that they should, and he was quite upset about that."

In essence, Stahelin's conversations with Fennessey are being offered to elucidate Fennessey's conversations with Davis in order to prove *Davis'* prejudice or bias. In our view, there is an inherent unreliability in admitting testimony of one person's state of mind in order to gain insight into another person's state of mind.

Plaintiffs also object to Panek's testimony regarding his knowledge about a conflict between Fennessey and Davis. At trial, defense counsel asked Panek if he was aware of any differences of opinion between Fennessey and Davis with respect to the operations of the office park. Panek testified that his knowledge about this matter was based upon conversations he had with Fennessey, Davis, and a secretary at the property. Plaintiffs' attorney objected to this testimony because of its hearsay nature.

The trial court then instructed the jury that the testimony is being admitted to show:

"[K]nowledge to this individual about some problems that existed between Messrs. Davis and Fennessey, not to prove the truth of the matter, but just there is some friction there and is being made aware of it."

Panek then proceeded to testify that: (1) Davis felt money could be saved by purchasing more items for the office park; (2) Davis felt he should have the authority, rather than Fennessey, to negotiate certain aspects of tenants' leases; (3) Davis felt he needed more authority; (4) Davis felt he should not have to report directly to Fennessey on some decisions; (5) Davis felt the on-site bookkeeper was not an adequate secretary; and (6) that there was friction between Fennessey and Davis with respect to requests Fennessey made of Davis to perform certain functions in a timely manner. Without knowing who made these statements to Panek, their reliability is inherently suspect. Furthermore, they are self-serving and, if not submitted to prove the truth of the matter, are irrelevant.

Plaintiffs' argument that Stahelin's and Panek's testimony is not relevant is correct because their testimony serves to attack Davis' credibility as a witness and is, therefore, inadmissible as impeachment on collateral matters. Thus, defendants' impeachment of Davis should have occurred on cross-examination and not by introduction of other evidence. *Poole v. University of Chicago* (1989), 186 Ill. App. 3d 554, 561.

■ Plaintiffs finally argue that the trial court committed error when it allowed defendants to dismiss their contribution claim

against Free during the instruction conference. A motion for voluntary dismissal after the trial has begun is addressed to the discretion of the trial court, whose decision is reversible only for abuse of that discretion. (*Newlin v. Foresman* (1982), 103 Ill. App. 3d 1038, 1045.) Unless the underlying motives for the dismissal manifest themselves in prejudicial acts, there is no basis for reversal. (*Newlin*, 103 Ill. App. 3d at 1046.) In our view, the combination of Free's dismissal, along with the improper use of his admissions as discussed above, resulted in prejudice to plaintiffs. The dismissal of Free from the case without further instructions on the matters relating to the admissions created a situation where the admissions were used beyond their permissible scope, that is, they served as evidence in defendants' favor against plaintiffs where they should have only been used as evidence in the dispute between defendants and Free. Thus, while Free's dismissal from this suit was not error in and of itself, the absence of adequate instruction to the jury on matters relating to this dismissal was an abuse of discretion. Once Free was no longer in the suit, the jury should have been instructed to disregard those aspects of the evidence which related to Free's admissions.

■■ As a final matter, defendants filed a motion to strike plaintiffs' statement of facts because it contained improper argument and comments and made inaccurate reference to the record in violation of Supreme Court Rule 341(e)(6). (134 Ill. 2d R. 341(e)(6).) We deny this motion because plaintiffs' violation of the rule was not so flagrant as to hinder or preclude our review. *Knight v. Haydary* (1992), 223 Ill. App. 3d 564.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

UNVERZAGT and QUETSCH, JJ., concur.