(text box: 1) NO. 5-00-0255

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

COLIN KOEHLER, a Minor, by His Mother and Next )  Appeal from the

Friend Jane Koehler, JANE KOEHLER, and )  Circuit Court of

MICHAEL KOEHLER, )  Clinton County.

)

     Plaintiffs-Appellees, )

)

v. )  No. 94-L-19

)

DAVID NEIGHBORS, )  Honorable

   )  John P. Coady,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

David  Neighbors, M.D., appeals from the trial court's final order entered on March 28, 2000, denying his motion for a new trial.  We affirm.

Colin Koehler was born on April 2, 1992.  After Colin's birth, the doctors in the office of David Neighbors, M.D., were designated as his pediatricians, and so Dr. Neighbors and his partner provided Colin's medical care from his birth.

On May 16, 1992, Dr. Neighbors examined Colin in the emergency room at St. Joseph's Hospital in Breese, Illinois.  Six-week-old Colin presented to the emergency room with a 102-degree fever.  Following the physical exam, Dr. Neighbors ordered blood tests, X rays, and a lumbar puncture to assist in diagnosing the cause of Colin's fever.  Based upon the examination and the test results, Colin was diagnosed with viral pneumonia and questionable cardiomegaly.

On Friday, June 5, 1992, when Colin was nine weeks old, he developed another fever.  In the morning, the fever was low.  Colin's father, Mike, stayed home with him while his mother, Jane, went to work.  Later that morning, Mike determined that the fever was much worse.  He called Jane at work to tell her that Colin's fever was over 104 degrees.  Jane called Dr. Neighbors' office, but she learned that Dr. Neighbors' office was closed on Fridays.  She then contacted St. Joseph's Hospital, and a representative provided her with the necessary information to reach Dr. Neighbors at home.

Ultimately, Jane was able to talk to Dr. Neighbors later in that afternoon.  She informed him that at that time Colin had a 104-degree temperature.  She asked for guidance. Dr. Neighbors asked some questions, and Jane answered them, advising Dr. Neighbors that she and Mike had not observed any other abnormal symptoms.  Dr. Neighbors prescribed infant Tylenol and asked Jane to contact him immediately if she should notice any abnormal symptoms.  Otherwise, Dr. Neighbors wanted to see Colin in his office on Monday morning if the fever persisted through the weekend.

Over the next 48 hours, Mike and Jane followed the instructions given and made efforts to lower Colin's body temperature.  Neither parent slept much because of these ongoing attempts.  Despite their efforts, Colin's temperature never fell below 102 degrees.  At 4 a.m. Sunday morning, Colin began grunting.  At one point early Sunday morning, Jane thought that Colin's head looked somewhat enlarged, but when she and Mike looked closer under the light, they decided that she had been mistaken.  During this same time frame, Jane noticed that on one occasion Colin's left arm stiffened.  For most of Sunday, Colin's behavior was not terribly unusual, although he did sleep more and eat a little less than usual.

At 4 p.m., Colin began staring blankly and his breathing quickened.  At that time, his parents took him to the emergency room at St. Joseph's Hospital.  He was admitted to the hospital at approximately 4:45 p.m.  The emergency room physician notified Dr. Neighbors of Colin's admission.  After dropping his son off at their home, Dr. Neighbors made the 15-minute drive to the hospital, and he immediately went to examine Colin.  The physical examination revealed an abnormal blood pressure, a temperature of 105 degrees, a distended abdomen, and a bulging anterior fontanel.  Dr. Neighbors later testified that after seeing Colin on that date, he believed that Colin could have meningitis.  He noted the abnormal breathing pattern and the grunting, and he testified that Colin's condition implied that he was experiencing seizures.  Additionally, Colin was nonresponsive to verbal stimuli, and he thought that perhaps Colin's neck was stiff.  In his professional opinion, if Colin did not receive immediate care, Colin would not be expected to live.  Dr. Neighbors performed a spinal tap, noting that the spinal fluid was cloudy, another meningitis indicator.  Colin was started on intravenous antibiotics to fight the infection and steroids to help prevent any central nervous system damage.  After the diagnosis of bacterial meningitis was made, Dr. Neighbors arranged for Colin's airlift transport to Cardinal Glennon Hospital in St. Louis, Missouri, as Colin was far too ill to be cared for at St. Joseph's Hospital.  

Colin remained at Cardinal Glennon Hospital until June 23, 1992.  He was discharged with seizure disorder, hearing loss, cerebral palsy, and mental retardation.  For months after coming home, Colin experienced pain and would not allow anyone other than his mother and sister to touch him.  Since that time he has undergone several surgical procedures.  Colin is severely limited in his mobility and communicative skills.  Colin's conditions are permanent and have required constant care and education.  

At the trial, two pediatric experts testified on behalf of Colin and his parents.  They both agreed that if an infant is less than three months of age with a history of previous illness and presented with a 104-degree temperature with no other symptoms, then a doctor should examine the infant and order diagnostic testing to determine the fever's source.  If the diagnostic tests showed no obvious cause of the fever, then antibiotics should not necessarily be prescribed.  These physicians provided opinions that Colin had occult bacteremia in his bloodstream on Friday when Jane initially contacted Dr. Neighbors.  The occult bacteremia later progressed to bacterial meningitis.  One of these physicians specifically testified that if Dr. Neighbors had ordered diagnostic tests on Friday, the results would have revealed abnormalities indicating the necessity of antibiotics.  Both physicians testified that if Dr. Neighbors had examined Colin and started him on antibiotics on Friday, Colin would not have developed bacterial meningitis and suffered its consequences.

Expert physicians also testified on Dr. Neighbors' behalf.  One of these experts testified that he believed that Colin was already suffering from insidious onset meningitis and that, therefore, a prescription of antibiotics on Friday would not have helped.  Both of these experts also testified that an automatic physical examination and diagnostic testing in an infant presenting with a 104-degree temperature would only occur in infants less than two months of age.  In other words, since Colin was nine weeks old, and thus older than two months of age, his temperature alone did not necessitate an examination and testing.  Both physicians testified that Dr. Neighbors did not deviate from the appropriate standard of medical care.

From the testimony of all of the physicians, it became clear that there is a split of authority on when an infant with an elevated temperature must undergo a thorough physical examination and diagnostic testing.  Dr. Neighbors and his experts cited authority for their position that such treatment is not required when an infant is more than two months of age.  The physicians who testified on Colin's behalf provided authority for their positions that such treatment is required until an infant reaches three months of age.

Colin and his family also presented expert testimony to the jury on the issue of damages.  One expert presented an extensive life-care plan for Colin.  This life-care plan only extended to the age of 45 and began at the age of 21, and depending upon whether Colin lived in a nursing care facility or in a home, the cost ranged from $1.7 million to $2.1 million.  Another expert testified as to the present cash value of Colin's care and his earning potential.  The present cash value of Colin's earning potential if he completed high school was $864,061, and if he completed college, it was $1,161,402.

The parents testified to Colin's ordeal, including his pain and suffering upon his discharge from the hospital and his ongoing care and education.  

We do not know the precise amount of the medical bills incurred by Colin's parents, as the parties do not list the amounts in their briefs and no trial exhibits were included in the record on appeal.

At the close of all the evidence and arguments, the jury was instructed on the law.  At one point the jury sent out a note indicating that the members were confused about the issue of proximate causation and particularly about two instructions they were given.  The trial court proposed to simply reread those instructions to the jury with more emphasis.  Defense counsel objected to any rereading of the instruction, stating that the jurors should simply be told that they had their instructions on the law.  The trial judge acknowledged that the jury should be assisted in cases where the members had questions regarding the law.  However, the trial judge felt strongly that rereading the instruction was simply all that was required.  Counsel for Dr. Neighbors also wanted one of the instructions altered to remove a potentially confusing optional portion.  Counsel for Colin and his parents did not agree to this modification.  The jury was brought back into the courtroom, and the trial judge reread the instruction at issue with additional inflection.  After the jurors returned to their deliberations, counsel for Dr. Neighbors sought to make a record on the issue.  He tendered a version of the instruction without the optional portion.  The trial judge noted that the version of the instruction given to the jury had not been objected to at the original instruction conference.  After much discussion, defense counsel withdrew his proposed instruction.

Ultimately, the jury returned with a verdict against Dr. Neighbors in the total amount of $1,858,000.  The jury awarded no damages for Colin's resulting disability, his past pain and suffering, his future pain and suffering, his past medical and medically related expenses, his past assistance expenses, or the present cash value of future assistance expenses.  The jury awarded Colin $1,393,500 for the present cash value of future medical and medically related expenses and $464,500 for the present cash value of future earnings lost after Colin reaches the age of 18.

Dr. Neighbors filed a posttrial motion, which the trial court denied on March 28, 2000.

Dr. Neighbors initially argues that the trial court erred in failing to direct a verdict in his favor at the close of Colin's case and at the close of all the evidence.

The standard of review we must follow on this issue is whether all the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favored the movant that no contrary verdict could possibly stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967).

Dr. Neighbors argues that Colin failed to establish that his injuries and damages were proximately caused by Dr. Neighbors' neglect.  He correctly argues that Colin and his family bear the burden of proof in a medical malpractice case and must affirmatively prove that Dr. Neighbors was negligent and that his conduct fell below the established standard of care.  See 
Boey v. Quaas
, 139 Ill. App. 3d 1066, 1071, 487 N.E.2d 1222, 1224-25 (1986).  They must further prove that such negligence caused Colin's injuries.  See 
Boey
, 139 Ill. App. 3d at 1071, 487 N.E.2d at 1224-25.  He specifically argues that Colin's experts testified that Colin did not have bacterial meningitis until Sunday and therefore implicitly that there was nothing for Dr. Neighbors to diagnose on Friday.  This argument ignores other portions of the testimony of the experts where they opined that Colin had occult bacteremia in his bloodstream on Friday and that had Dr. Neighbors followed the standard of care for infants less than three months of age, he should have physically examined and tested Colin on Friday.  One of these experts further indicated that he believed that some of the diagnostic tests would have yielded abnormal results and that antibiotics should have been given on Friday.  Both of Colin's experts testified that Dr. Neighbors deviated from the applicable standard of care.

Accordingly, we do not find that the evidence so overwhelmingly favored Dr. Neighbors such that a contrary verdict could never stand.  The trial court's rulings against Dr. Neighbors' motions for directed verdict were appropriate.

Dr. Neighbors next argues that the trial court should have granted his posttrial motion for a judgment notwithstanding the verdict.

A judgment notwithstanding the verdict should not be granted unless the evidence, 

when viewed in the light most favorable to the opponent, so overwhelmingly favored the movant that no contrary verdict could possibly stand.  
Pedrick
, 37 Ill. 2d at 510, 229 N.E.2d at 513-14.  A judgment notwithstanding the verdict is inappropriate in situations where " 'reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented.' "  
McClure v. Owens Corning Fiberglas Corp.
, 188 Ill. 2d 102, 132, 720 N.E.2d 242, 257 (1999) (quoting 
Pasquale v. Speed Products Engineering
, 166 Ill. 2d 337, 351, 654 N.E.2d 1365, 1374 (1995)).  The trial court should not reweigh the evidence and set aside a verdict just because the jury could have drawn different conclusions or inferences from the evidence or because the court feels that another result would have been far more reasonable.  
McClure
, 188 Ill. 2d at 132, 720 N.E.2d at 257 (quoting 
Maple v. Gustafson
, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 512 (1992)).  Similarly, the appellate court should not usurp the jury's role on questions of fact that were fairly submitted, tried, and determined from the evidence which did not overwhelmingly favor either position.  
McClure
, 188 Ill. 2d at 132, 720 N.E.2d at 257 (quoting 
Maple
, 151 Ill. 2d at 452-53, 603 N.E.2d at 512).  On review, we apply a 
de novo
 standard to determinations on motions for judgments notwithstanding the verdict.  
McClure
, 188 Ill. 2d at 132, 720 N.E.2d at 257.

Without detailing all of the evidence that the jury heard and that is detailed in the facts portion of this order, we simply cannot find that the evidence overwhelmingly favors Dr. Neighbors.  The jury was presented with two very different opinions about the standard of care relative to a nine-week-old infant.  It heard consistent testimony that Colin did not have bacterial meningitis on Friday when his mother had the phone conversation with Dr. Neighbors.  However, it heard different testimony about whether there was a form of bacteria within Colin's bloodstream on that Friday and whether diagnostic testing would have revealed an abnormality necessitating treatment.  As we are not in a position to reweigh the evidence, we cannot usurp the jury's decision based upon that evidence.  Accordingly, the trial court's order denying Dr. Neighbors' motion for a judgment notwithstanding the verdict was proper.

Dr. Neighbors next argues that the trial court erroneously denied his motion for a new trial.

The trial court's ruling on a motion for a new trial should not be reversed on appeal unless the party who is seeking the new trial can affirmatively show that the court clearly abused its discretion.  
Maple
, 151 Ill. 2d at 455, 603 N.E.2d at 513.  In determining whether the trial court abused its discretion, we must consider whether the jury's verdict was supported by the evidence and whether the complaining party was denied a fair trial.  
Maple
, 151 Ill. 2d at 455, 603 N.E.2d at 513.

Dr. Neighbors contends that the verdict is contrary to the law and evidence, pointing to several trial court errors.  

The first error to which Dr. Neighbors draws our attention involves the jury's confusion over the proximate-causation instructions and the trial court's refusal to provide an additional instruction on the issue.  Initially, we note that defense counsel did not object to the wording of either proximate-causation instruction.  While the trial court and attorneys struggled with the issue, they focused on one of the two instructions.  The instruction at issue defined proximate cause as "any cause which, in natural or probable sequence, produced the injury complained of."  Illinois Pattern Jury Instructions, Civil, No. 15.01 (3d ed. 1995) (hereinafter IPI Civil 3d).  This instruction also contained the following optional sentences from the pattern instruction: "[The cause] need not be the only cause, nor the last or nearest cause.  It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."  IPI Civil 3d No. 15.01.

The trial judge proposed to counsel that he simply bring the jury back in and reread the instruction with inflection.  The attorney for Colin and his parents indicated that he had no objection.  Counsel for Dr. Neighbors initially said that his only problem with the trial  judge's proposal was how the court would handle additional questions from the jury on the issue.  Then he objected to the proposed rereading on the basis that the jury had already been given the instruction once.  The judge replied that case law required him to affirmatively respond to the jury's questions on matters of law.  
People v. Childs
, 159 Ill. 2d 217, 228-29, 636 N.E.2d 534, 539 (1994).  Provided with no other option, the trial judge determined that  the objection would be overruled and that he would reread the instruction to the jury.  After this ruling, Dr. Neighbors' attorney proposed removing the optional portion of the instruction.  He argued that this optional language should only be used in cases where the defense properly raises the defense of contributory negligence.  He explained that Dr. Neighbors never pled or otherwise raised the issue of contributory negligence.  

The trial judge called the jury back in, explained that proximate causation is a difficult concept, and reread the instruction with inflection.  The jury retired for continued deliberations.  

After the jury went back to continue its deliberations, Dr. Neighbors' attorney sought to make an additional record on the issue of the one instruction.  He offered a version of the instruction excluding the optional section.  The trial court noted that the record revealed that defense counsel had not objected to the instruction with the optional section when it originally was proposed.  The trial judge and counsel for Colin and his parents took note that defense counsel conducted his cross-examination of witnesses in a manner which brought out the issue of the parents' potential contributory negligence in failing to bring Colin into the emergency room 12 hours earlier when his health clearly began to deteriorate.  Defense counsel then explained that he argued in his closing argument that Dr. Neighbors was in no way seeking to blame the parents for what happened.  Counsel for Colin and his parents noted that closing arguments could never be construed as evidence and that the jury had been instructed that the arguments were not evidence.  He then proposed that Dr. Neighbors execute an admission on the subject that could be read to the jury.  The trial judge agreed with this idea and began drafting such an admission.  Faced with the prospect of an admission, counsel for Dr. Neighbors formally withdrew his proposed instruction on proximate causation without the optional section.

To the extent that the instruction with the optional language was given to the jury without objection, Dr. Neighbors waived any subsequent complaints about the inclusion of the optional language.  While Dr. Neighbors, through his attorney, objected to the trial court's rereading of the instruction, the objection was either on the basis that no instruction should be reread or on the basis that the optional language should be removed.  Allowing the jury to stand on the original instructions when faced with a direct question on a legal matter is clearly contrary to the law of the State of Illinois.  
Childs
, 159 Ill. 2d at 228-29, 636 N.E.2d at 539.  Similarly, removing a portion of the instructions that have already been given to the jury is not appropriate.  Factually, defense counsel withdrew the proposed instruction without the optional portion, and so that issue is really not the object of Dr. Neighbors' complaints on appeal.

On appeal, Dr. Neighbors contends that in light of the obvious confusion, the judge should have offered additional instruction to the jury on the issue of proximate causation.  See 
Childs
, 159 Ill. 2d at 228-29, 636 N.E.2d at 539.  It is incumbent upon the parties to make a proper record.  The issue of proper instruction still remains up to the parties, to the extent that the parties make recommendations to the trial court.  If the parties disagree with the trial court's proposed method of dealing with a jury question, then the objecting party needs to make the appropriate suggestion.  The situation is really no different from when a party complains on an appeal that the trial court should have given an instruction to the jury and that instruction was never proposed by the complaining party.  No relief is warranted in that situation.  See 
Deal v. Byford
, 127 Ill. 2d 192, 202-03, 537 N.E.2d 267, 271 (1989).

Generally speaking, when a jury sends out a question to the trial judge relative to a matter of law, more is required than simply rereading the instruction with inflection.  
Childs
, 159 Ill. 2d at 228-29, 636 N.E.2d at 539.  Many times a jury's concerns or confusions can very simply be addressed.  The problem with the instruction and the legal concept at issue is that "proximate causation" is a legal concept with which attorneys and judges continue to struggle.  There is no simple definition.  The instructions are designed to explain the concept as easily as possible.  It would be extremely difficult for a trial court to further define proximate causation beyond the standard instructions.

In this case, after the trial judge reread the proximate-cause instructions with inflection, the jury continued its deliberations.  The jury posed no further questions and was able to continue deliberations to a verdict.  Accordingly, we find no basis to conclude that the trial court's rereading of the proximate-cause instructions with inflection and without further explanation necessitates a new trial under the circumstances of this particular case.

Dr. Neighbors also argues that the trial court erroneously overruled his attorney's objection to a question to one of Colin's experts regarding the existence of occult bacteremia  and its causal connection to Colin's fever.  He argues that the question lacked foundation because, by its very definition, occult bacteremia is hidden and thus impossible to diagnose.  The standard for a physician's testimony on such an issue is whether or not the opinion is based upon a reasonable degree of medical certainty.  This expert expressed his opinion pursuant to that standard, and therefore the question and response were proper.  Furthermore, the decision to allow an expert to testify to an opinion is within the trial court's sound discretion.  
Soto v. Gaytan
, 313 Ill. App. 3d 137, 145, 728 N.E.2d 1126, 1132 (2000).  We find no basis to conclude that the trial court abused its discretion in overruling defense counsel's objection.

Dr. Neighbors next argues that the trial court erred in giving one of Colin's proposed instructions related to circumstantial evidence.  The instruction was given over defense counsel's objections.  This instruction stated: "A fact may be proved by circumstantial evidence.  Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of truth of the facts sought to be proved."  See IPI Civil 3d No. 1.03.  Dr. Neighbors' attorneys objected on the basis that since this is a medical malpractice case, the elements of the offense cannot be proven by circumstantial evidence.  Colin's attorneys countered that the instruction was warranted because there was evidence from which the jury could infer that Colin was bacteremic on Friday.  The trial court agreed with this argument and allowed the instruction.  The determination of proper jury instruction lies within the trial court's sound discretion.  
Rowe v. State Bank
, 247 Ill. App. 3d 686, 690, 617 N.E.2d 520, 523-24 (1993).  We will not reverse a judgment on the basis of improper jury instruction unless we have reason to conclude that the instruction clearly misled the jury. 
Phelps v. Chicago Transit Authority
, 224 Ill. App. 3d 229, 234, 586 N.E.2d 352, 355 (1991). Based upon this standard, we cannot find that the trial court abused its discretion in giving the instruction, and there is simply no evidence that the jury was misled by the circumstantial-evidence instruction.  Even if this one instruction was improperly given, this instruction alone could not justify a new trial.

Additionally, Dr. Neighbors argues that the trial court improperly overruled his counsel's objections to Colin's negligence instruction that contained the allegation that Dr. Neighbors negligently and carelessly failed to order tests which would have led to the diagnosis of bacteremia.  Defense counsel argued that Colin would have wound up with bacterial meningitis even if antibiotics had been administered on Friday.  The trial court determined that there was sufficient evidence about the particular negligence allegation and that therefore the issue should be allowed to go to the jury for consideration.  The trial court's reasoning is sound and does not constitute an abuse of discretion.

Dr. Neighbors finally argues that the jury's verdict was inappropriately high and that the trial court should have entered a remittitur.

The amount of money a jury awards "is peculiarly an issue of fact for the jury to determine."  
Lee v. Chicago Transit Authority
, 152 Ill. 2d 432, 470, 605 N.E.2d 493, 509 (1992).  A jury award will not be subject to a remittitur unless the award is excessive, falling outside the range of possible conclusions reasonably supported by the facts.  
Lee
, 152 Ill. 2d at 470, 605 N.E.2d at 509-10; 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 412, 689 N.E.2d 1057, 1079 (1997).  An award would be found excessive if it appears to be the result of passion or prejudice or is so large that it shocks the judicial conscience.  
Best
, 179 Ill. 2d at 411-12, 689 N.E.2d at 1079.  The use of a remittitur needs to be monitored on an individual case basis, and the circumstances supporting the jury's verdict must be carefully considered before a jury's verdict is reduced.  
Best
, 179 Ill. 2d at 413, 689 N.E.2d at 1080.  When the jury has received proper instruction and otherwise has a reasonable basis for its award, a reviewing court will not disturb the verdict.  
Lee
, 152 Ill. 2d at 470, 605 N.E.2d at 510.  While there is no precise mathematical formula for determining whether a jury award is fair and reasonable, the following factors should be considered: the extent of the injuries suffered and the degree of the permanency of those injuries, the plaintiff's age, the possibility of future difficulties, the amount of medical expenses involved, and the restrictions upon the plaintiff's life as a result of the injuries suffered.  
Epping v. Commonwealth Edison Co.
, 315 Ill. App. 3d 1069, 1072, 734 N.E.2d 916, 918 (2000) (citing 
Richardson v. Chapman
, 175 Ill. 2d 98, 114, 676 N.E.2d 621, 629 (1997)).  We will not compare Colin's verdict to other similar medical malpractice verdicts.  See 
Richardson
, 175 Ill. 2d at 114, 676 N.E.2d at 629.

The amounts awarded by the jury fall short of the amounts discussed in the expert testimony given on the issue of damages.  Additionally, the jury determined that damages were not warranted for several aspects of Colin's case.  This was the jury's prerogative.  Given the extent of Colin's injuries, the permanency of those injuries, his future projected difficulties, and the restrictions upon his life, we believe that the jury's award was quite fair and reasonable.  Accordingly, we have no basis to conclude that the award is excessive and should be reduced.

For the foregoing reasons, the judgment of the circuit court of Clinton County is hereby affirmed.

Affirmed.

CHAPMAN, P.J., and MAAG, J., concur.

                                      NO. 5-00-0255

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

COLIN KOEHLER, a Minor, by His Mother and Next )  Appeal from the

Friend Jane Koehler, JANE KOEHLER, and )  Circuit Court of

MICHAEL KOEHLER, )  Clinton County.

)

     Plaintiffs-Appellees, )

)

v. )  No. 94-L-19

)

DAVID NEIGHBORS, M.D., )  Honorable

   )  John P. Coady,

     Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: June 1, 2001

___________________________________________________________________________________

Justices
: Honorable Clyde L. Kuehn, J.

Honorable Charles W. Chapman, P.J., and

Honorable Gordon E. Maag, J.,

Concur

___________________________________________________________________________________

Attorneys
 Richard M. Roessler, Karen E. Mason, Gundlach, Lee, Eggmann, Boyle &

for
 Roessler, 5000 West Main Street, P.O. Box 23560, Belleville, IL 62223-0560

Appellant
 

___________________________________________________________________________________

Attorneys
 Gerald L. Montroy, Leslye M. Winslow, Carr, Korein, Tillery, Kunin, Montroy,

for
 Cates, Katz & Glass, LLC, 412 Missouri Avenue, East St. Louis, IL 62201

Appellees
 

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 06/01/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.