2020 IL App (2d) 190880-U
No. 2-19-0880
Order filed September 16, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOAN T. LAMPERT, Chicago Title Land Trust | ) | |
| Company, as Successor Trustee to American | ) | No. 15-CH-1805 |
| National Bank and Trust Company of Chicago, | ) | |
| a National Banking Association, as Trustee | ) | |
| under a Trust Agreement dated 06/04/1985 and | ) | |
| known as Trust Number 64532, | ) | Honorable |
| | ) | Luis Berrones, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Birkett and Justice Hudson in the judgment.

**ORDER**

¶ 1   *Held*:   Trial court presumed to have properly denied the Bank's motion for leave to file a second amended complaint when the Bank provided no transcript of the hearing on that motion, no bystanders report, and there were no written findings in the trial court's order denying the motion. The trial court properly granted defendants' motion for a directed finding on count I of the Bank's first amended complaint when the Bank did not demonstrate a *prima facie* case for specific performance. The trial court also properly granted defendants' motion for a directed finding on count II of the first amended complaint when the Bank failed to make a *prima facie*

showing that it was entitled to an equitable lien. Finally, the Bank forfeited its claim that the trial court abused its discretion in denying its post-trial motion when it presented no substantive argument to support its position, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018).

¶ 2    After a bench trial, the trial court directed a finding for defendants Joan Lampert and Chicago Title Land Trust Company of Chicago (Chicago Title) (collectively, defendants) and against plaintiff Bank of America (Bank).  On appeal, the Bank argues that the trial court erred in (1) denying leave to file a second amended complaint, (2) granting defendants' motion for a directed verdict, and (3) denying its post-judgment motion to modify the judgment. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    In March 2009, Countrywide Bank FSB (Countrywide) agreed to lend $310,000 to Lampert (the Loan) to refinance two prior loans that were secured by two mortgages recorded against a property located at 57 Cumberland Drive in Lincolnshire Illinois. Chicago Title, as successor trustee under a trust agreement dated June 4, 1985 and known as trust number 64532 (the Land Trust), held record title to the property. Lampert was the sole beneficiary of the Land Trust.

¶ 5    At the March 26, 2009, scheduled closing of the Loan transaction, Lampert signed a Note payable to Countrywide, a Department of Housing and Urban Development settlement statement (HUD-1) that showed the disbursements of the proceeds of the Loan, and a Document Correction and Fees Due Agreement (Document Correction Agreement).

¶ 6    Paragraph 10 of the Note, titled "Uniform Secured Note," stated in part, "[in] addition to the protections given to the Note Holder under this Note, a Mortgage, Deed or Trust, or Security Deed***dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I made in this Note."  No mortgage to secure the

Loan and the Note was executed. Countrywide endorsed the Note in blank. The Bank is the holder of the Note and the successor to Countrywide.

¶ 7    The Document Correction Agreement, which Lampert signed, provided that:

"regardless of the reason for any loss of, misplacement of, inaccuracy in, or failure to sign any Loan documentation, Borrower(s) agrees as follows: If any document is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan, or [*sic*] otherwise missing upon request of the Lender, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary to replace or correct the lost, misplaced, misstated, inaccurate or otherwise missing document(s)."

¶ 8    Lampert stopped making payment on the Loan in July 2014. In a letter dated March 6, 2015, the Bank requested that Lampert direct the Land Trust to execute the mortgage pursuant to the Document Correction Agreement that she signed in 2009. Lampert refused to do so, indicating that she did not agree to the mortgage at the 2009 closing because it included an escrow provision requiring her to pay to the lender amounts for real estate taxes and property insurance.

¶ 9    On October 23, 2015, the Bank filed a one count verified complaint for specific performance of the Document Correction Agreement to require Lampert to direct the Land Trust to execute the mortgage. On April 18, 2017, the Bank filed a first amended verified complaint. Count I of the first amended complaint alleged a cause of action for specific performance. Count II, in the alternative, alleged a cause of action for an equitable lien on Lampert's property. The first amended complaint relied upon the correspondence the Bank sent to Lampert in 2015, which was attached as Exhibit D. That exhibit also contained a document entitled, "mortgage," which

stated that it was prepared by an agent of Countrywide and should be returned to Countrywide. The mortgage was dated March 27, 2009, the day after Lampert had allegedly refused to execute the mortgage. The "borrower" listed on the mortgage was the Land Trust.

¶ 10    On June 14, 2017, defendants filed a joint answer and affirmative defenses to the amended complaint. They admitted that the Land Trust held record title to the property and that Lampert was the sole beneficiary of the Land Trust and that she had the power to direct the Land Trust to act. The Bank moved to strike the affirmative defenses. The motion to strike was granted.

¶ 11    On August 12, 2018, the Bank filed a motion for summary judgment and a Lake County Local Rule 2-1.04 statement of undisputed material facts. Lake County Cir. Ct. R. 2-1.04(A)(3) (eff. Oct. 24, 2016). Defendants filed responses to both the motion and the statement. In their response to the statement of undisputed facts defendants admitted that the Bank was the successor to Countrywide; Lampert resided at the property; the Land Trust held record title to the property; Lampert was the sole beneficiary of the Land Trust and possessed the power of direction for the Land Trust; Lampert received $310,000 in proceeds of the Loan, which were used to refinance a prior loan on the property that was secured by a mortgage on the property[1]; Lampert expected the Loan to be secured by a mortgage that was acceptable to her; Lampert executed the HUD-1 settlement statement; the Bank sent correspondence to Lampert requesting that she direct the Land

---

[1] We note that the Bank's statement of undisputed material fact incorrectly states, "Lampert received $310,000 in proceeds on the Loan, which were used to refinance *a* prior *loan* on the Property that was secured by *a mortgage* on the Property." (Emphasis added.) Defendants admitted to that incorrect fact. The record overwhelmingly reflects, however, that the $310,000 that Lampert allegedly received was to be used to pay off *two* prior loans that were secured by *two* mortgages.

Trust to execute a mortgage; following the Loan transaction, Lampert made payments to the Bank on the Loan, including payments for real property taxes and insurance escrow through July 2014.

¶ 12    The HUD-1 statement, which the closer did not execute, showed that the Loan proceeds paid off two loans, a loan for $257,456 and a loan for $24,132. It also showed that $1076.52 of the Loan proceeds were paid into escrow for hazard insurance premiums, and $10,051.20 of the Loan proceeds were paid into escrow for real estate taxes.

¶ 13    On October 26, 2018, the trial court denied the Bank's motion for summary judgment. Trial was set for February 25, 2019. On January 28, 2019, the Bank filed a motion for leave to file a second amended complaint. In the motion, the Bank indicated that although it disagreed with the trial court that there were material issues of fact precluding summary judgment on count I, it was not seeking to amend count I.  The Bank was, however, seeking to amend count II based upon the trial court's *sua sponte* ruling that count II did not state a claim for relief because an equitable lien was a remedy and not a cause of action.  Count II of the second amended complaint sought to state a claim for equitable subrogation and requested an equitable lien based upon the monies advanced to pay off the previous mortgages on the property. The Bank also added count III which sought to foreclose on the equitable lien in count II.

¶ 14    Inexplicably, the proposed second amended complaint attached different correspondence and a different mortgage than that attached to the first amended complaint. The mortgage attached to the proposed second amended complaint listed the borrower as Lampert, and not the Land Trust. Additionally, it was dated March 26, 2009, the date of the failed closing, and not March 27, 2009. The identity of the party to whom the mortgage was to be returned was also different than the mortgage attached to the first amended complaint.  In the mortgage attached to the first amended complaint the document was to be returned to Countywide, but the mortgage attached to the

proposed second amended complaint indicated that it should be returned to Chicago Title-Service Link Division. Both documents indicated that they were prepared by Mari Carmen Shaw. After a hearing on February 22, 2019, the trial court denied the Bank's motion for leave to amend without any written findings.

¶ 15    A bench trial was held on February 25, 2019. The only witness called was Lampert, whom the Bank called as an adverse witness. Lampert testified that she and her late husband acquired the property in 1985 and placed the property into a Land Trust. They obtained a loan to finance the purchase of the property, which was secured by a mortgage. Her husband died in 1999 and a few years later she refinanced the original loan. At that refinance, Lampert signed a note and directed the Land Trust to sign the mortgage. She later obtained another loan secured by a second mortgage on the property. Lampert testified that she was the sole beneficiary of the Land Trust and she had the power to direct the Land Trust. She understood the difference between a note and a mortgage.

¶ 16    Lampert said that she intended the Loan to refinance the two prior mortgage loans on the property and that the Loan be secured by a mortgage. She also understood that she would need to direct the execution of the mortgage.

¶ 17    On March 26, 2009, a man came to Lampert's home to close the Loan. She signed several papers, including the Note and the Document Correction Agreement. During the closing she asked where it indicated in the documents that the insurance and taxes were not going to be escrowed. The closer said that those terms were not included in any of the documents, but not to worry about it because "we" could take them off. Lampert said she refused to sign the mortgage or any more papers because she had requested that the Loan not require an escrow for real estate taxes and property insurance.

¶ 18    Lambert said that after the closing she did not believe that the Loan had closed; she thought that she was continuing to pay on the old loans. She now understood that she had had been paying on the instant Loan for the past several years. She admitted that she might have received coupons with the Loan. Lampert stopped making payments on the Loan around five years after the failed closing. Lampert admitted that her payments on the Loan included amounts for escrow. The interest rate that she was paying was not significantly different than the prior interest rate. The Banks' counsel directed Lampert to review the HUD-1 statement where it indicated that the cash-to-borrower amount was $8769.78. Lampert said that she was never given that amount at the failed closing.

¶ 19    The Bank rested and defendants moved for a directed finding. The court took the motion under advisement, and on February 26, 2019, it granted defendants' motion. The court first found that the Bank had failed to make a *prima facie* case for specific performance on count I of its first amended complaint. Although Lampert signed the Document Correction Agreement, the plain language of that document indicated that she only agreed to sign any additional documents that were consistent or contained terms that were agreed to at a closing. The Document Correction Agreement was not meant to cover the Bank's situation, *i.e.*, to force a borrower to agree to mortgage terms that she had previously objected to and rejected six years earlier. The court said that the critical element of specific performance was the existence of an agreement.  Here, however, the Bank was asking the court to create a mortgage contract between the parties under which Lampert would be required to perform when, in reality, there had been no mortgage contract agreement. The court noted further that even if the Bank had established a *prima facie* case for specific performance, the weight of the evidence did not support the Bank's claim on that count. It found unpersuasive the Bank's argument that it would not have funded the loan but for the

oversight of the mortgage's execution. It also disagreed with the Bank's opinion that Lampert was not credible. The court indicated that although Lampert was at times was evasive, it found her to be credible at other times in her testimony, especially regarding her demand to not have escrow provisions in the mortgage and her refusal to sign the mortgage with those provisions.

¶ 20 In reaching its conclusion, the court was also troubled that the HUD-1 statement was not admitted into evidence, even though the Bank relied upon it. Additionally, it was revealed at trial that the closer never signed the attestation in the HUD-1 that swore that the Loan funds were disbursed in the manner stated in the HUD-1. Considering all the evidence, the court indicated that, even if it had not believed Lampert, the Bank introduced no other evidence related to this transaction and was asking the court to speculate as to whether the transaction closed in the face of evidence supporting Lampert's position that she refused to close and was not aware that the Loan had closed.

¶ 21 Regarding count II alleging a cause of action for an equitable lien, the court found that the Bank had failed to establish a *prima facie* case on that count also. It first noted that an equitable lien was a remedy and not a cause of action and that the Bank had not identified what cause of action it was pursuing. Based on the argument of the Bank's counsel, however, the court concluded that the Bank sought, in the alternative, a declaratory judgment that an equitable lien was appropriate where no written mortgage existed. However, viewing the evidence in the light most favorable to the Bank, it remained unclear whether the Loan was ever funded based upon Lampert's testimony. The evidence showed that the Loan closing failed because Lampert would not agree to the mortgage terms related to the escrow. Lampert testified that she did not believe the refinancing Loan occurred and that the funds were not disbursed as suggested in the HUD-1

statement. Thus, the Bank could not unilaterally impose an obligation upon Lampert to seek an equitable lien.

¶ 22    Accordingly, the court held that the Bank failed to establish a *prima facie* case for either count in the first amended complaint, and it dismissed the cause with prejudice.  The Bank filed a motion for a modification of the judgment, which the court denied. The Bank filed a timely notice of appeal.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, the Bank argues that the trial court erred in (1) denying it leave to file a second amended complaint, (2) entering a directed finding for defendants, and (3) denying its post-judgment motion to modify the judgment.

¶ 25                    A. Leave to File Second Amended Complaint

¶ 26    The Bank argues that the trial court abused its discretion in denying its motion for leave to file a second amended complaint.

¶ 27    We review the denial of a motion for leave to file an amended complaint for an abuse of discretion. *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 331 (2008).  An abuse of discretion will be found only if the court acted arbitrarily without using its conscientious judgment, exceeded the bounds of reason and ignored recognized principles of law, or if no reasonable person would take the position adopted by the court. *Popko v. Continental Casualty Co.*, 355 Ill. App. 3d 257, 266 (2005).

¶ 28    According to the common law record, the Bank's motion for leave to file a second amended complaint was set for a hearing on February 22, 2019. On that date, the trial court entered an order stating that, after holding a hearing, it denied the Bank's motion. The court's order contained no written findings. On appeal, the Bank has provided neither a transcript of the hearing, nor a

bystanders' report. Illinois Supreme Court Rule 323 requires an appellant to prepare and file a transcript or bystander's report of the proceedings in the trial court. Ill. S. Ct. R. 323(a), (c) (eff. July 1, 2017). Where an appellant fails to furnish the pertinent record of proceedings on appeal, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984); *Illinois Founders Ins. Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 39. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Illinois Founders Ins. Co.*, 2015 IL App (1st) 122481, ¶ 39.

¶ 29     Since we have no transcript of the hearing after which the court denied the Bank's motion for leave to file a second amended complaint, no bystander's report, and no written findings in the court's order, we have no basis upon which to determine whether the trial court abused its discretion in denying the Bank's motion for leave to amend. Accordingly, we will presume that the court acted in conformity with the law in denying the motion.  For this reason, we find that the trial court properly denied the Bank's motion for leave to file a second amended complaint.

¶ 30                                    B. Directed Finding

¶ 31     The Bank next argues that the trial court erred in entering a directed finding in favor of defendants because the evidence established a *prima facie* case for specific performance and an equitable lien. It also contends that the trial court's factual findings were against the manifest weight of the evidence.

¶ 32     Section 2-1110 of the Code of Civil Procedure allows a defendant to move for a directed finding at the close of the plaintiff's case in a bench trial. 735 ILCS 5/2-1110 (West 2018). To rule on such a motion, the trial court must engage in a two-step analysis. *Indeck Energy Services v. DePodesta*, 2019 IL App (2d) 190043, ¶ 57 (citing *Edward Atkins, M.D., S.C. v. Robbins, Salomon*

*& Patt, Ltd.*, 2018 IL App (1st) 161961, ¶ 53). First, it must determine whether the plaintiff has presented a *prima facie* case as a matter of law by producing some evidence on every element necessary to its cause of action. *Id.* If not, the trial court must grant the motion and enter judgment in the defendant's favor. *Id.* If the plaintiff has presented a *prima facie* case, then the trial court is required to consider the credibility of the witnesses, draw reasonable inferences therefrom, and generally consider the weight and quality of the evidence. *Id.* ¶ 54. If sufficient evidence exists for the plaintiff's *prima facie* case to survive, the trial court should deny the defendant's motion and continue the trial. *Id.* Where the evidence is not sufficient, the court should grant the motion and enter judgment in the defendant's favor. *Id.*

¶ 33    In general, if the court grants a motion for a directed finding at the first stage of the section 2-1110 analysis, our standard of review is *de novo*, whereas if the court grants the motion at the second stage, our standard of review is the manifest-weight standard." *Id.* ¶ 58. A decision is against the manifest weight of the evidence when an opposite conclusion is apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on evidence. *In re Marriage of Verhines & Hickey*, 2018 IL App (2d) 171034, ¶ 51.

¶ 34                                         A. Specific Performance

¶ 35    The Bank argues that the trial court erred when it found that it had failed to present a *prima facie* case for specific performance because the Document Correction Agreement did not apply under these facts. Specifically, it claims that the court erred in concluding that the Document Correction Agreement did not apply where the parties agreed that the Loan would be secured by a mortgage, as evidenced in part by the Note executed by Lampert, and Lampert's admissions and testimony. It claims that the mortgage is a missing document within the meaning of the Document Correction Agreement because the parties intended for a mortgage to be executed as part of the

Loan transaction. Finally, the Bank argues, "[t]o the extent that the court determines that the parties did not agree to an escrow provision, the Mortgage could be modified to delete the escrow requirement."

¶ 36    To be entitled to specific performance, a plaintiff must prove: (1) the existence of a valid, enforceable contract; (2) the plaintiff's compliance with the contract or willingness and ability to perform; and (3) the defendant's refusal to perform its part of the contract. *Happy R. Securities, LLC v. Agri-Sources, LLC*, 2013 IL App (3d) 120509, ¶ 42. As we have noted, we will review *de novo* the trial court's determination that the Bank did not make a *prima facie* showing of specific performance. *Indeck Energy Services*, 2019 IL App (2d) 190043, ¶ 58.  See ¶ 34.

¶ 37    We agree with the court that the Bank failed to make a *prima facie* showing of specific performance. Although the parties agreed that the Loan would be secured by a mortgage, it was unrefuted at trial, and the Bank does not argue now, that the parties did not come to an agreement on the *terms* of a mortgage. Although some terms of a contract may be missing or left to be agreed upon, the parties' failure to agree upon an essential term of a contract indicates that the mutual assent required to make a contract is lacking and, thus, there is no enforceable contract. *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1091 (2003). Clearly, an essential element of a mortgage is the amount of the monthly payment, and whether property taxes and insurance are to be escrowed will greatly affect the amount of that monthly payment. The Bank's argument that there was an enforceable mortgage is further stymied, of course, by its failure to introduce any mortgage into evidence; it is well-settled that the appellate court cannot consider documents not admitted into evidence at trial. *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 24.

¶ 38    It its reply brief, the Bank alleges that the "Corrected Mortgage," that being the one dated March 27, 2009, was in fact admitted into evidence along with the Document Correction

Agreement. As support for this claim, the Bank notes that the mortgage dated March 27, 2009, was attached as Exhibit D to the first amended complaint. Also, in Lampert's response to its statement of undisputed material facts, she admitted to the receipt of Exhibit D but denied that she agreed to sign it. The Bank also notes that at trial, Lampert reviewed the mortgage dated March 27, 2009, and said that she did not object to the provisions in that mortgage other than the escrow provision and the interest rate, and the interest rate was not listed in the mortgage. In conclusion, the Bank claims:

> "Because the March 26, 2009, mortgage and the Corrected Mortgage have identical terms and provisions, other than their dates and their identifications of the mortgagors, [Lampert's] testimony concerning her sole objection at the closing was also directed to the Corrected Mortgage, which was part of the record. Plaintiff did not need to cause the Corrected Mortgage to be admitted as a separate exhibit."

¶ 39    Generally, a document must be offered by its proponent and admitted into evidence by the trial court before it may be considered as evidence. *People v. One 1999 Lexus, VIN JT8BH68X2X0018305*, 367 Ill. App. 3d 687, 689–90 (2006). However, a document attached to a complaint and admitted by an answer is properly considered by the court even if not admitted into evidence. *Jill Knowles Enterprises, Inc.*, 2017 IL App (2d) 160811, ¶ 26 (citing *Lipschultz v. So– Jess Management Corp.*, 89 Ill. App. 2d 192, 199–200 (1967)).

¶ 40    We reject the Bank's argument that the March 27, 2009, mortgage was admitted into evidence. Here, Lampert did not admit to the contents of the March 27, 2009, mortgage in her response to the statement of undisputed facts. Instead, she only admitted that attached to the 2015 correspondence letter was a copy of a mortgage to be executed. However, Lampert denied that she agreed to sign that mortgage. Moreover, at trial, when the Bank's counsel asked Lampert if she

had refused to sign the document that accompanied the 2015 letter (the March 27, 2009 mortgage), Lampert said that she did not remember ever seeing that mortgage. She thought that something had come from the Bank, but that it came before 2015. Also, the correspondence from the Bank did not have a mortgage attached to it. Lampert said she remembered receiving a letter from the Bank asking her to sign some documents, but the Bank did not explain what the documents contained. She remembered that in that correspondence, the Bank offered her a $200 Visa card if she would sign the documents. She sent that correspondence to her attorney. When the Bank's counsel later asked Lampert whether she objected to any provision in the March 27, 2009, mortgage other than the escrow provision Lampert said no, except for the interest rate (which was contained in the Note, and not in either mortgage). Accordingly, the record is clear that Lampert did not admit to the contents of the March 27, 2009, mortgage, either in her response to the statement of undisputed material facts, or in her testimony at trial. Therefore, the March 27, 2009, mortgage was not admitted into evidence below.

¶ 41    Since the Bank could not prove the first requirement of specific performance, *i.e.,* the existence of a valid, enforceable contract, the Document Correction Agreement was of no avail in proving that the Bank had presented a *prima facie* case for specific performance. We disagree with the Bank that, simply because Lampert signed the Document Correction Agreement, she agreed to consent to unspecified terms of an uncertain mortgage agreement. *Schweihs v. Davis*, 344 Ill. App. 3d 493, 499 (2003) (in general, courts will enforce contracts as written, and they will not rewrite a contract to suit one of the parties).

¶ 42    Further, we find that the terms of the Document Correction Agreement do not support the Bank's argument that it is entitled to specific performance given the unique facts leading up to the failed closing. The Document Correction Agreement provides that in consideration for

Countrywide funding the Loan, Lampert "regardless of the reason for any loss of, misplacement of, inaccuracy in, or failure to sign any Loan documentation," will comply with Countrywide's request to "execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary to replace or correct the *lost, misplaced, misstated, inaccurate or otherwise missing document(s).*" (Emphasis added). Here, no mortgage was lost, misplaced, inaccurate or otherwise missing. Lampert refused to execute a mortgage that contained terms she opposed. A plain reading of the terms of the Document Correction Agreement did not require Lampert to sign a mortgage with terms that she specifically rejected. To read the document otherwise would render it unconscionable as totally one-sided. *Labuz v. Labuz*, 2016 IL App (3d) 140990, ¶ 40 (to be unconscionable, the agreement must be improvident, totally one-sided, or oppressive).

¶ 43    Having determined that the Bank failed to present a *prima facie* case for performance, we need not review the Bank's remaining contention that the trial court's finding that even if it had made a *prima facie* showing of specific performance, the weight of the evidence did not support a cause of action for specific performance was against the manifest weight of the evidence.

¶ 44                                B. Equitable Lien

¶ 45    The Bank next contends that the trial court erred in finding that it did not make a *prima facie* case for an equitable lien when it established both (1) a debt and (2) an agreement that the property would secure the repayment of that debt. Specifically, it argues that Lampert judicially admitted to the debt and testified that the Loan funded and that it paid off her prior loans secured by unrelated mortgages. It contends that the court also erred as a matter of law because an equitable lien can be imposed as to an agreement of the parties upon equitable considerations.

¶ 46    The imposition of an equitable lien is a remedy for a debt that cannot be legally enforced, but which should be recognized under considerations of fairness. *Paliatka v. Bush*, 2018 IL App

(1st) 172435, ¶ 28 (citing *Hargrove v. Gerill Corp.*, 124 Ill. App. 3d 924, 930 (1984)). The essential elements of an equitable lien are (1) a debt, duty, or obligation defendant owed to plaintiff; and (2) the existence of a res that, in some way, is particularly related to the debt or obligation. *Paliatka*, 2018 IL App (1st) 172435, ¶ 28. An equitable lien may be found either (1) where the parties expressed in writing their intention to make real property, personal property, or some fund the security for a debt but did not use express lien language or (2) where considerations of fairness and justice would require imposing a lien even without an express agreement between the parties. *Paine/Wetzel Associates, Inc. v. Gitles*, 174 Ill. App. 3d 389, 393 (1988).

¶ 47 We initially note that, with the exception of one footnote, the Bank failed to cite to the record at all in the argument section of its brief on equitable liens, though it refers to the contents of the record several times. This is a violation of Supreme Court Rule 341(h)(7) (eff. May 25, 2018) (the appellant's brief shall contain contentions and reasoning with citation of authorities and the pages of the record relied upon). Violations of Rule 341 can cause a party to forfeit an issue on appeal. *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. Although we choose not to apply the forfeiture rule here, we strongly advise counsel to strictly comply with all Illinois Supreme Court Rules in the future. *Morse v. Donati*, 2019 IL App (2d) 180328, ¶ 16 (Illinois Supreme Court rules have the force of law and are not mere suggestions).

¶ 48 In support of its equitable lien claim, the Bank relies upon *Paine/Wetzel Associates, Inc.* In *Paine/Wetzel*, a real estate brokerage brought an action against the trustees and beneficiaries of a land trust and alleged that the beneficiaries owed it a commission for the sale of property. The brokerage sought a declaration that it held an equitable lien on the property to secure payment of the commission. *Paine/Wetzel*, 174 Ill. App. 3d at 392. The trial court, *sua sponte,* dismissed that count for a failure to state a claim as a matter of law. *Id.* The appellate court reversed and held that

the brokerage had alleged an existence of a debt, the unpaid commission, and the *res* to which the obligation attached, the property. *Id.* at 394. It also referred to an exception to the rule that a beneficiary cannot affect the title to property in an Illinois land trust, specifically, that when a beneficiary of an Illinois land trust, when acting in his capacity as beneficiary, may enter into a valid contract affecting the title to property if the trust agreement vested in him the sole right to direct the trustee to convey title. *Id.* (citing *Madigan v. Buehr*, 125 Ill. App. 2d 8, 16-17 (1970)). Since the plaintiff alleged in its complaint that the beneficiaries possessed the right to direct a conveyance from the land trust, the appellate court held that this count stated a cause of action. *Id.*

¶ 49    Initially we note that, unlike in *Paine/Wetzel*, the Bank here did not request declaratory relief in the form of an equitable lien. Instead, it attempted to state a clause of action for an equitable lien, though such a lien is an equitable remedy and not a cause of action. See *Mordkovich v. Tishman, Speyer Properties*, 2017 IL App (1st) 161609, ¶ 23. However, the trial court gave the Bank the benefit of the doubt that it was requesting declaratory relief in this count, and we shall do the same.

¶ 50    More problematic for the Bank, however, is that *Paine/Wetzel* involved an appeal from a motion to dismiss, and this case involves an appeal from a finding of a directed verdict. As we have noted, the first step a trial court must take when confronted with a motion for a directed finding is to determine whether the plaintiff has presented a *prima facie* case as a matter of law by producing *some evidence* on every element necessary to its cause of action, and if it did not, the trial court must grant the motion and enter judgment in the defendant's favor. *Indeck Energy Services*, 2019 IL App (2d) 190043, ¶ 57.  We reject the Bank's contention that it produced *prima facie* evidence of a debt and a *res* to which that obligation related, so as to survive defendants' motion for a directed finding on this count.

¶ 51　　The Bank claims that it established a debt because Lampert: (1) judicially admitted and testified at trial that the Loan funded; and (2) she received the benefits of the Loan as evidenced by the Note because the proceeds, among other things, paid off two prior loans secured by mortgages recorded against the property. The Bank argues that defendants judicially admitted that the Loan funded in their response to the statement of undisputed facts, where they admitted that Lampert "received $310,000 in the proceeds of the Loan, which were used to refinance a prior loan on the Property that was secured by a mortgage on the Property." The Bank states that defendants also admitted that after the failed closing Lampert made payments on the Loan.

¶ 52　　We agree with the Bank that an admission in response to a statement of undisputed fact constitutes a judicial admission.  See *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 557-58 (2005). Thus, standing alone, Lampert's judicial admission as to the funding of the loan might have been dispositive as to the question of a debt.  However, Lampert's admission does not stand alone.  At trial, Lampert testified on direct examination by the Bank that she signed the HUD-1 statement that indicated she should receive $8,769.76 at the closing, but that she did not receive that sum. In its brief and at oral argument, the Bank claimed that Lampert only testified that she did not receive the $8,769.76 at the time of the closing and *not* that she never received those funds. We disagree with the Bank's interpretation of Lampert's testimony. The record reflects that the Bank's counsel asked Lampert whether it was accurate that the HUD-1 indicated that $8,769.76 was given to her, and Lampert responded, "[n]o, I did not, because I was not given any money from the bank. At that time I was not given $8,700." Lampert never testified that she received that money at a later time, and we will not read such a statement into her answer. The fact that Lampert did not receive the amount listed on the HUD-1 was unrefuted, and it was bolstered by the fact that the closer never signed the attestation in the HUD-1statement that swore that the loan funds were disbursed

in the manner stated therein. By eliciting evidence at trial regarding the same subject matter as the judicial admission at issue, the Bank has waived its right to rely on the admissions, and those prior admissions must be disregarded by the factfinder. *Rowe v. State Bank of Lombard*, 247 Ill. App. 3d 686, 696 (1993) (right to rely on admission is waived if party introduces evidence on issue controlled by admission). Further, Lampert testified that she did not understand at the time of the failed closing that she was paying on a new loan when she continued to pay her mortgage. As we have noted, these statements acted as a waiver of Lampert's earlier judicial admissions.

¶ 53    The Bank argues that it did not waive its right to rely on the admissions since Lampert testified as an adverse witness, citing to *Kapraun v. Kapraun*, 12 Ill. 2d 348, 355 (1957). However, *Kapraun* does not stand for the proposition that a party does not waive its right to rely on a judicial admission when an adverse witness gives contradictory testimony at trial. In fact, *Kapraun* did not involve judicial admissions at all. Instead, *Kapraun* was simply a case where an adverse witness testified one way, but when he was confronted with an exhibit that contradicted that testimony, he acknowledged that his earlier testimony was inaccurate. Our supreme court said that the plaintiffs were not bound to vouch for the veracity of the adverse witness' testimony and they could introduce any competent evidence in direct contradiction, though they were bound by any uncontroverted testimony by the adverse witness. *Kapraun*, 12 Ill. 2d at 355. Accordingly, we reject the Bank's claim that it did not waive its reliance on Lampert's earlier judicial admissions when Lampert's trial testimony contradicted those admissions.

¶ 54    Although we agree with the Bank's argument that Lampert should have known that she was paying on a new loan because she was making one monthly payment instead of two and that the interest rate had changed after the failed closing, the trial court found Lampert to be credible with most of her testimony, especially her testimony that she did not agree to have the taxes and

insurance escrowed and that she refused to sign the mortgage because that clause was not present in any of the closing document. We do not find that the trial court's finding on this point to be unreasonable, arbitrary, or not based on evidence. See *In re Marriage of Verhines & Hickey*, 2018 IL App (2d) 171034, ¶ 51.

¶ 55    We also agree with the trial court that even if Lampert was not a credible witness, the Bank presented no other evidence related to the transaction and asked the court to speculate upon whether a closing occurred. It failed to prove there was a debt when it did not enter the HUD-1 into evidence, and even if it had proven a debt, it could not tie that debt to the property when it did not enter any mortgage into evidence.

¶ 56    Finally, the Bank argues that the same facts that it relied upon to argue for the imposition of an equitable lien based on an express agreement between the parties support the imposition of an equitable lien based upon general considerations of fairness. However, the Bank has failed to cite any authority in support of this proposition, and therefore it has forfeited this argument. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Mordkovich*, 2017 IL App (1st) 161609, ¶ 23 (argument that principles of fairness and justice require a court to recognize an equitable lien is forfeited when appellant failed to cite any authority in support of that proposition other than the general principle that, when there is no other remedy available, a trial court may employ its equitable power to grant relief when the circumstances require).

¶ 57    Forfeiture aside, we are not persuaded that the trial court manifestly erred in not granting it an equitable lien on fairness grounds. The Bank would have us impose an equitable lien, but in support asks us to speculate as to what exactly happened in 2009.  This we will not do.  Looking as we must to the evidence presented at trial, it must be noted that the Bank entered neither the HUD-1 statement, not the mortgage into evidence.  Rather, it simply relied on the Note and

Lampert's adverse testimony, which waived her earlier admissions that $310,000 had been disbursed to her. There simply was insufficient evidence for the court to find an equitable lien in the Bank's favor on fairness grounds based upon these facts.

¶ 58                           C. Post-Judgment Motion

¶ 59     Finally, the Bank argues that the trial court abused it discretion in denying its post-judgment motion to modify the judgment.

¶ 60     Section 2-1203(a) of the Code of Civil Procedure provides that in non-jury cases, any party may file within 30 days a motion for a rehearing, a retrial, or modification of the judgment or to vacate the judgment or for other relief. 735 ILCS 5/2-1203(a) (West 2018). The purpose of such a motion is to alert the trial court to errors it has committed and to afford it an opportunity to correct those errors. *Steiner v. Eckert*, 2013 IL App (2d) 121290, ¶ 16. We review the trial court's denial of a section 2-1203 motion for an abuse of discretion. *Id.*

¶ 61     The Bank has forfeited this issue. It has provided no argument to support its claim that the trial court abused its discretion other than to say that it filed the post-trial motion to "alert the trial court of errors concerning its findings that Plaintiff failed to establish claims for specific performance and an equitable lien." It also states that if the trial court found that Lampert did not execute the mortgage because of the escrow provision, it should have ordered Lampert to direct the Land Trust to execute a mortgage within an escrow provision. This argument is an extremely sparce re-hash of the arguments it raised on appeal and once again, we find that the Bank has violated Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018). For these reasons, we decline to review this issue.

¶ 62                                    III. CONCLUSION

¶ 63    While we recognize that the end result here may seem harsh, it necessarily follows from our application of the standard of review to the findings of the trial court in light of the evidence introduced at trial.  In sum, because the Bank filed neither a transcript nor a bystanders report of the hearing on its motion for leave to file a second amended complaint, and the trial court's order denying the motion contained no written findings, we must presume that the trial court properly denied the motion. Also, since the Bank did not prove the first requirement of specific performance, *i.e.*, the existence of a valid, enforceable contract, the trial court properly granted defendants' motion for a directed finding on that count. The court also properly directed a finding for defendants on the second count of the Bank's first amended complaint for an equitable lien where the Bank failed to prove the existence of a debt and that there was an agreement that the property would secure the repayment of that debt. Finally, the Bank forfeited its claim that the trial court abused its discretion in denying its post-trial motion to modify the judgment when it presented no substantive argument to support its position, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018).

¶ 64    For the forgoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 65    Affirmed.