2024 IL App (1st) 230134
No. 1-23-0134
Opinion filed March 8, 2024

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

GAIL GALICH, as plenary guardian for the
Estate of Steven Butts, a disabled person,

    Plaintiff-Appellee,

v.

ADVOCATE HEALTH AND HOSPITAL
CORPORATION, d/b/a Advocate
Trinity Hospital Group; ADVOCATE HEALTH
AND HOSPITALS CORP., an Illinois
Corporation, d/b/a Advocate Medical Group and
Advocate Lutheran; ADVOCATE HEALTH
PARTNERS, an Illinois Corporation, d/b/a
Advocate Physician Partners; and MICHAEL
SOO-YOUNG JOO, M.D.,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeal from the Circuit Court
of Cook County.

No. 19 L 11525

The Honorable
Robert E. Senechalle,
Judge, presiding.

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice C.A. Walker concurred in the judgment and opinion.
Justice Tailor specially concurred, with opinion.

**OPINION**

¶ 1      Steven Butts went to an emergency room with a broken jaw. The emergency room doctor

allegedly failed to properly intubate Butts, depriving him of oxygen and causing permanent

brain damage. After a 10-day trial, a jury returned a verdict for Butts, awarding $45.3 million in damages. The trial court granted Butts $2.8 million in prejudgment interest.

¶ 2    The judge instructed the jury to decide whether any one of four actions or omissions that Butts alleged the emergency room doctor did or failed to do breached the standard of care and proximately caused his injuries. The trial court also instructed the jury that its verdict must be unanimous. During deliberations, the jury sent two notes to the judge, asking whether they needed to have unanimity regarding any of the four findings and indicating they did not. The trial judge responded in writing to both questions, "[Y]ou must make a unanimous decision that Dr. Joo was negligent. You do not need to be unanimous as to which one of the *** possible acts constitute the negligence."

¶ 3    Advocate Health and Hospital Corporation, d/b/a Advocate Trinity Hospital Group, and Advocate Physician Partners, a managed care corporation and its affiliated entities (collectively, Advocate), and emergency room physician, Dr. Michael Soo-Young Joo, argue that (i) the trial judge's answers to the jury questions deprived it of its constitutional right to a unanimous jury verdict and constitutes reversible error and (ii) the statute mandating prejudgment interest in personal injury and wrongful death cases, section 2-1303(c) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1303(c) (West 2022)), is unconstitutional.

¶ 4    We affirm. The trial court properly instructed the jury that to find for Butts, they needed to agree Dr. Joo was negligent unanimously, which is all that the well-established law regarding medical negligence requires. Further, we hold section 2-1303(c) of the Code constitutional.

¶ 5                                                Background

¶ 6    Gail Galich drove her 30-year-old son, Steven Butts, to Advocate Trinity Hospital's emergency room, after he fell from a second-floor balcony. Butts suffered facial injuries,

including bilateral fractures of his jaw, and complained of a headache, but he was walking, talking, and breathing without difficulty. According to his medical history, Butts, who had been deployed in Iraq and Afghanistan years earlier, had a history of hypertension, post-traumatic stress disorder, and a traumatic brain injury.

¶ 7        Emergency room physician Dr. Michael Soo-Young Joo examined Butts and observed a missing tooth, a lacerated chin, and bleeding from the face. Butts's heart rate, respiration rate, and blood oxygen levels were within normal ranges, and he was alert and well-oriented. Dr. Joo's exam was limited because Butts could not fully open his mouth, due to pain from his broken jaw. Dr. Joo reported that Butts was confused and uncooperative. Believing Butts may have life-threatening neck and back injuries, Dr. Joo decided to transfer him to an affiliated hospital, Advocate Christ Medical Center, a level-one trauma hospital. Dr. Joo advised Butts he wanted to intubate him to prevent his airway from destabilizing during the ambulance transfer. Butts consented.

¶ 8        Before attempting to intubate Butts, Dr. Joo administered paralyzing medicine at 5:31 a.m., which prevented Butts from breathing on his own. The testimony varied as to what happened next. Dr. Joo testified he opened Butts's mouth and used a glidescope to move his tongue out of the way so he could insert an endotracheal tube into his airway (trachea). But blood in Butts's mouth obscured his view of Butts's vocal cords, which he needed to see to intubate him. Dr. Joo tried a second time without the glidescope, but again was unsuccessful. Dr. Joo claimed he never placed the endotracheal tube into Butts. At 5:38, Dr. Joo paged anesthesiology for assistance and gave Butts oxygen using a laryngeal mask airway (LMA) and a bag valve mask (referred to as "bagging"). Butts went into pulseless electrical activity

and cardiac arrest at about 5:45 a.m., necessitating a "code blue." Dr. Joo and his team performed chest compressions on Butts and gave him cardiac medication.

¶ 9 Nurse anesthetist Vivian Willis, who responded to Dr. Joo's page, testified that when she arrived at Butts's bedside, she suctioned his airway, examined him, and saw an endotracheal tube in his esophagus rather than his trachea. Willis removed the endotracheal tube and inserted it into Butts's airway at 5:49, about 18 minutes after Dr. Joo began the intubation. Butts's code blue ended at 5:56 a.m. Placed on a ventilator, an ambulance transferred Butts to the University of Chicago Medical Center.

¶ 10 Galich, who was in the exam room, agreed that Dr. Joo tried twice to intubate her son before asking someone to call anesthesia for assistance. She also agreed Butts went into a "code blue" until nurse Willis arrived and placed the endotracheal tube in his airway. Galich said she did not see Dr. Joo use an LMA to give Butts oxygen. She also said someone was bagging her son after the second failed intubation but could not recall if anyone tried after the first attempt.

¶ 11 The parties disagree about the cause and nature of Butts's injuries but agree he has permanent brain damage, requires 24-hour nursing care, and resides in a nursing home.

¶ 12 Galich, as Butts's guardian, filed a complaint against Dr. Joo, alleging negligence, as well as vicarious liability claims against Advocate. Galich claimed Butts suffered oxygen deprivation and catastrophic brain injury as a result of Dr. Joo's negligence. She alleged Dr. Joo was negligent in (i) attempting a rapid sequence intubation on Butts, (ii) failing to consult anesthesia before attempting to intubate, (iii) positioning an endotracheal tube in Butts's esophagus, (iv) failing to discover that the endotracheal tube was placed in his esophagus, (v) failing to check the endotracheal tube placement with an X-ray, (vi) failing to check endotracheal tube placement with a monitoring device, and (vii) failing to listen to breath

sounds after positioning the endotracheal tube. Galich also asserted that one or more of those negligent acts proximately caused Butts's injuries.

¶ 13                                                                Trial

¶ 14        At trial, in addition to testimony from Galich and Dr. Joo, each side presented expert witnesses to opine whether Dr. Joo complied with the standard of care. (Other expert witnesses testified as to Butts's quality of life and damages.) Testifying for Galich, Dr. John Downs, an anesthesiologist and critical care physician, opined that Dr. Joo should have examined Butts's airway before administering the paralytic and sedative medications. He acknowledged that Dr. Joo could not thoroughly examine Butts's airway due to his inability to open his mouth without pain. Still, Dr. Downs testified that the standard of care required giving Butts morphine, fentanyl, or other pain-relieving medication before administering paralyzing drugs, so he could open his mouth to ensure his airway was clear.

¶ 15        Dr. Downs also testified that placing the endotracheal tube into Butts's esophagus alone was not a deviation from the standard of care. Dr. Joo's negligence, however, was his failure to recognize his mistake, remove the tube, and put it into Butts's airway. Regardless of misplacing the endotracheal tube, according to Dr. Downs, Dr. Joo violated the standard of care by giving Butts inadequate oxygen after administering the paralyzing and sedative medications. Dr. Downs opined Dr. Joo's negligence in depriving Butts of sufficient oxygen was the sole cause of his brain damage.

¶ 16        Galich's other expert witness, Dr. Christopher Baugh, M.D., an emergency medicine physician, opined that Dr. Joo violated the standard of care by (i) failing to examine Butts's airway before trying to intubate him, (ii) failing to place the endotracheal tube in the correct place, and (iii) failing to recognize sooner that the endotracheal tube had gone into the

esophagus and not the airway. Dr. Baugh also opined that Dr. Joo violated the standard of care by giving Butts insufficient oxygen while he was sedated, which, after a prolonged period, caused permanent brain damage.

¶ 17     Advocate called three expert witnesses. Dr. Edward Ward, an emergency medicine doctor, opined it was appropriate and within the standard of care for Dr. Joo to try to intubate Butts without first calling for assistance. He acknowledged that blood obstructed Dr. Joo's view of Butts's airway, but Dr. Joo followed the correct course of action by placing a LMA and calling anesthesia for assistance after two unsuccessful intubation attempts. Dr. Ward disagreed that Dr. Joo left an endotracheal tube in Butts's esophagus as it made "no sense" for Dr. Joo to call for assistance had he already intubated the patient.

¶ 18     Dr. Asokumar Buvanendran, an anesthesiology expert, opined that Dr. Joo complied with the standard of care by calling anesthesiology for assistance after unsuccessfully attempting to intubate Butts and using an LMA to oxygenate Butts in the interim.

¶ 19     Dr. Joel Meyer, a neuroradiology expert, testified that Butts did not incur a hypoxic-ischemic brain injury while under Dr. Joo's care. Dr. Meyer explained that a hypoxic-ischemic brain injury occurs when insufficient blood flow or oxygen causes brain tissue to die. Dr. Meyer reviewed diagnostic images taken at the University of Chicago Medical Center on July 21 and 28, 2019, including magnetic resonance imaging and computed tomography scans. He testified that the July 21 images were normal and did not show signs of hypoxic brain injury. Further, if that injury had occurred while Butts was in the emergency room, it would have appeared on the image. Moreover, the July 28 imaging was "very abnormal," showing extensive swelling in Butts's brain, consistent with toxic leukoencephalopathy, and not

hypoxic- ischemic brain injury. Dr. Meyer concluded that Butts's brain injury occurred between July 21 and July 28 at the University of Chicago hospital.

¶ 20                                    Jury Instructions and Questions

¶ 21        During the jury instruction conference, the parties agreed on the instructions the judge would give the jury. Neither party requested special interrogatories. Relying on Illinois Pattern Jury Instructions, Civil, No. 20.01 (revised Aug. 2023), the trial court instructed the jury that Butts alleged that Dr. Joo was **"**negligent in one or more of the following respects" by failing to: (i) properly examine his airway prior to administering the paralytic; (ii) timely recognize that he was not receiving proper oxygenation; (iii) adequately oxygenate him; and (iv) timely correct improper intubation. And Butts "further claims that one or more of the foregoing was a proximate cause" of his injuries. Using Illinois Pattern Jury Instructions, Civil, No. 21.02 (approved Dec. 8, 2011) on the burden of proof, the court instructed that Butts had the burden of proving "the defendants acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions and that in so acting or failing to act the defendants were negligent." The court also told the jury, "Your verdict must be unanimous."

¶ 22        During deliberations, the jury submitted a written question to the trial court, stating: "[w]e understand that only one of the findings of negligence needs to be found in order to proceed. Do we need unanimous agreement on any one of the findings in order to proceed?" Over Advocate's objection, the trial court responded, "[i]n order to proceed, you must make a unanimous decision that Dr. Joo was negligent. You do not need to be unanimous as to which one of the four possible acts constitute the negligence."

¶ 23        The jury sent a "follow up" question to the trial court stating: "We have no unanimity as to any of the four findings that Dr. Joo was negligent. We have a split decision as to one of the

counts. We have a majority decision as to one of the counts. We are unanimous that on two of the counts that Dr. Joo was not negligent. With the majority vote on one, do we proceed?" The trial court proposed telling the jurors they should refer to its answer to their first question as well as the written jury instructions. Butts's counsel again agreed. Advocate's counsel suggested the trial judge instruct the jury to "refer to the jury instructions only." Over Advocate's objection, the court answered the jury's second question as follows: " '[t]he answer to your "follow up" [question] is this: Please refer to my answer to your first question along with the written jury instructions I have given you.' "

¶ 24        Deliberations continued, and a short time later, the jury returned a verdict for Butts, awarding him $45.3 million in damages.

¶ 25                                        Posttrial Proceedings

¶ 26        Advocate moved for a new trial, arguing, in part, that the trial court's answers to the jury's questions were reversible error, as they deprived defendants of their constitutional right to a unanimous jury verdict and a fair trial. For support, Advocate relied on *Schiff v. Friberg*, 331 Ill. App. 3d 643 (2002). In *Schiff*, also a medical negligence case, the jury instructions listed three separate acts by the defendant that the plaintiff contended the evidence proved. During deliberations, the jury sent a note asking: " 'To find for plaintiff does it require a una[ni]mous vote for at least one item (of 3)?' " (Emphasis omitted.) *Id.* at 659. The trial judge responded, " 'You must be unanimous that the Defendant was negligent in one or more of the respects set out in the instructions—and the Plaintiff was injured—and the negligence of the Defendant was a proximate cause of the injuries suffered by the Plaintiff. Remember, you must consider the instructions as a whole, not picking out one instruction and disregarding others.' "

(Emphases omitted.) *Id.* at 660. The appellate court held that "the trial court did not commit error in its responses to the jury questions." *Id.*

¶ 27    Advocate asserted, "*Schiff*—binding Illinois authority—squarely decided this issue and found jury unanimity is required on 'one or more' of the theories presented in the jury instructions." The trial court disagreed, finding the trial court's response in *Schiff* did not answer the jury's question but "merely repeated portions of the instructions already given to the jury." Further, the court concluded the appellate court held that the trial court "did not commit error" but without addressing, let alone answering, the substantive question of law. The court said, "The Appellate Court in *Schiff* said not one word about the issue of unanimity being required or not required as to which of several separate acts of defendant underpin the jury's finding of negligence." Indeed, the trial court concluded that "[n]o Illinois civil case expressly answers the question posed by the jury."

¶ 28    The trial court found a "clear answer" in criminal cases, holding that unanimity applies to the ultimate issue of the defendant's guilt or innocence of the crime charged. Unanimity is not required for the alternative means or ways the crime can be committed. See *People v. Travis*, 170 Ill. App. 3d 873 (1988); *People v. Harper*, 251 Ill. App. 3d 801, 807 (1993); *People v. Dunbar*, 2018 IL App (3d) 150674, ¶ 29.

¶ 29    The trial court also cited to *Chicago & Northwestern Ry. Co. v. Dunleavy*, 129 Ill. 132 (1889), for its conclusion that the jury needs unanimity that all of the elements of the cause of action have been met, not which, from among possible alternative acts, proved an element. In addition, the trial court cited cases from other jurisdictions, holding that jurors who agree on the verdict (even if under 12) must be unanimous that the defendant was negligent. Still, unanimity among them on which specific act or omission constituted negligence is not

required. See, *e.g.*, *Cleveland v. Wong*, 701 P.2d 1301, 1309 (Kan. 1985); *Stoner v. Williams*, 54 Cal. Rptr. 2d 243, 252 (Ct. App. 1996).

¶ 30 The trial court concluded that "[t]he jury need not unanimously agree as to which of several alternative acts of the defendant constituted the negligence, as long as the jury unanimously agrees that the evidence supports the conclusion that the defendant was negligent." Finding no error in its instruction, the court denied Advocate's posttrial motion.

¶ 31 The court also granted Butts's motion to amend the judgment to add statutory prejudgment interest of $2,833,153.13 for a total judgment of $48,139,119.54.

¶ 32                                                     Analysis

¶ 33                                              Unanimous Verdict

¶ 34 Advocate contends the trial court deprived it of its constitutionally guaranteed right to a unanimous jury verdict (*Sinopoli v. Chicago Rys. Co.*, 316 Ill. 609, 617-18 (1925)) by twice instructing the jurors they must unanimously agree Dr. Joo was negligent but did not need unanimity regarding which possible acts constituted the negligence. Advocate asks that we reverse the judgment and remand for a new trial.

¶ 35 We generally review a trial court's decision to grant or deny a jury instruction for an abuse of discretion. *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 13 " 'The standard for determining an abuse of discretion is whether, taken as a whole, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law.' " *Id.* (quoting *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002). Where, as here, we are considering the legal question of whether the instruction accurately conveyed the applicable law our review is *de novo*. *Id.* (citing *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 170 (2008)). Ultimately, a reviewing court should grant a new trial only where the trial court's refusal to

give a tendered jury instruction results in serious prejudice to the party's right to a fair trial. *Bailey v. Mercy Hospital & Medical Center*, 2021 IL 126748, ¶ 42 (citing *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007)).

¶ 36    As an initial matter, Butts contends Advocate forfeited its argument regarding jury unanimity by failing to suggest to the trial court an alternative answer to the jury's questions and cannot now argue the court gave the wrong answer or should have given a different answer. For support, Butts relies on *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 174 (1997), where a panel "pronounc[ed] a new rule" "that when jurors raise a question during deliberations, counsel must submit—in writing—the specific response counsel wants the court to give the jury." As Advocate notes, the Illinois Supreme Court has neither indicated it agrees nor have other appellate decisions adopted or cited *VanWinkle* for that proposition. Significantly, counsel for neither party submitted a proposed answer to the jury's question in writing, as Butts contends they should have.

¶ 37    Butts's attorney agreed with the trial judge's proposed answer. Advocate's counsel did not, instead suggesting that the judge instruct the jury to refer to the jury instructions only. Contrary to Butts's argument, trial judges often give jurors Advocate's suggestion that the jury be referred to the jury instructions. So, we reject Butts's contention that Advocate waived the issue.

¶ 38    Turning to the merits, Advocate argues that in a medical malpractice case, when a plaintiff makes several allegations of negligence, the jurors must agree unanimously on at least one of the allegations. Advocate asserts that two notes from the jurors indicate that the jury was not unanimous, particularly the second note revealing no unanimity on any single allegation and the speed with which the jury returned the verdict after the judge answered the second question.

Advocate asserts the trial judge gave improper answers to the jurors' questions because it allowed the jury to rule for Butts without unanimity as to at least one of his negligence allegations. Advocate asserts the trial judge should have referred the jury to the jury instructions or, as its attorney suggested at oral argument, given a different answer, namely, that the jurors need to be unanimous as to one of the allegations of negligence.

¶ 39    Butts asserts that the trial judge's answers were proper because a jury need not agree on a single negligence allegation so long as they unanimously agree that the defendant's negligence caused the injuries.

¶ 40    Section 2-1108 of the Code (735 ILCS 5/2-1108 (West 2022)) states that "[u]nless the nature of the case requires otherwise, the jury shall render a general verdict." Within the discretion of the court, the jury may be asked in writing to find specially on material questions of fact. Any party may request special interrogatories. As noted, neither party requested special interrogatories, and the jury returned a general verdict.

¶ 41    Our supreme court has held "[w]hen there is a general verdict and more than one theory is presented, the verdict will be upheld if there was sufficient evidence to sustain either theory, and the defendant, having failed to request special interrogatories, cannot complain." *Witherell v. Weimer*, 118 Ill. 2d 321, 329 (1987); see *Curry v. Burns*, 626 A.2d 719, 721 (Conn. 1993) (the " 'general verdict rule provides that, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party' "); *Christopherson v. St. Vincent Hospital*, 384 P.3d 1098, 1108 (N.M. Ct. App. 2016) (holding that if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party). Butts presented multiple alternative allegations of

negligence; the trial court presented four of them to the jurors. Given the jury's general verdict and having failed to request a special verdict, Advocate cannot now complain.

¶ 42　　　Special interrogatories aside, Advocate's argument does not persuade us. To succeed on a medical malpractice claim, the plaintiff must prove (i) the standard of care a medical provider should have followed, (ii) the defendant failed to meet the standard of care, and (iii) the plaintiff's injuries were proximately caused by the defendant's failure to meet the standard of care. *Guerra v. Advanced Pain Centers S.C.*, 2018 IL App (1st) 171857, ¶ 30.

¶ 43　　　Advocate argues that if, as here, a plaintiff alleges a medical provider was negligent in multiple ways, the plaintiff must present evidence to satisfy all three elements on at least one allegation, particularly for medical negligence cases as opposed to ordinary negligence cases. According to Advocate, in ordinary negligence cases, a plaintiff needs only to demonstrate the defendant violated a standard of care by failing to act as an ordinary and reasonably prudent person, citing *Advincula v. United Blood Services*, 176 Ill. 2d 1, 22 (1996). Advocate contends that the jurors indicated they did not unanimously agree that Dr. Joo was negligent in at least one of the ways Butts alleged. Specifically, Advocate points to the jurors' second note that they (i) agreed Dr. Joo was not negligent on two of Butts's allegations, (ii) had a "split" decision on another negligence allegation, and (iii) had a "majority" decision on the remaining negligence allegation. Thus, Advocate argues, the jurors did not unanimously agree that Dr. Joo breached the standard of care as to a single alleged act of negligence, but improperly "mixed and matched" negligence allegations to reach a patchwork consensus.

¶ 44　　　As it did in the trial court, Advocate argues that *Schiff*, 331 Ill. App. 3d 643, supports reversing the judgment. Advocate argues the trial court should have followed *Schiff*, which held that jurors must all specifically agree that, at a minimum, one act of alleged negligence

caused the plaintiff's injury and erred by finding *Schiff* did not address or answer the legal question—whether the jury must unanimously agree that at least one act satisfied all three requirements for proving medical malpractice.

¶ 45 We agree with the trial court. Although *Schiff* involved a similar jury question, the appellate court held that the trial court did not err in responding to the jury's question. As significant, the case does not address the substantive question of whether the jury must unanimously agree that one of the alleged acts constituted negligence. *Schiff* is not dispositive.

¶ 46 Similarly, *Dunleavy*, 129 Ill. 132, on which Butts relies, does little to advance his position. Issued more than 130 years ago and rarely, if ever, cited on the issue of jury unanimity, the language that Butts (and the trial court) rely on does not speak directly to that issue. While *Dunleavy* held that the jury's verdict must be unanimous, what the court meant by "method of reasoning" and "successive steps" leading to the judgment can be widely interpreted. *Id.* at 144-45.

¶ 47                          Consideration of Criminal Law

¶ 48 Aside from *Schiff*, in the absence of Illinois civil cases, much less medical malpractice cases, addressing jury unanimity, the trial court looked to criminal cases from Illinois and other jurisdictions for guidance. We disagree that criminal law bestows guidance on the issue here. The fundamental purposes of the two legal realms differ. Criminal law seeks punishment; civil law aims for compensation or specific remedies. Criminal defendants receive protections, especially constitutional protections, not afforded to civil defendants. The burden of proof is higher in criminal cases, requiring evidence beyond a reasonable doubt, while civil cases have a lower standard—preponderance of the evidence. And most tort law is derived from common law precedents; criminal law is statutory. Besides, attempting to apply criminal precedents

overlooks the unique principles, particulars, and nuances of both areas of the law. Nevertheless, we briefly address the criminal law cases, which we consider neither relevant nor helpful.

¶ 49     Advocate cites *People v. Scott*, 243 Ill. App. 3d 167, 168 (1993), where the defendant was charged with three counts of delivering controlled substances to "three undercover police officers in three unconnected transactions." The State tendered an instruction furnishing the jury with six verdict forms, one "guilty" and one "not guilty" for each count. *Id.* But the trial court modified the instruction to require two verdict forms, "guilty" and "not guilty." *Id.* The jury found defendant guilty of one count.

¶ 50     The appellate court reversed and remanded, finding that verdict forms for only one of the three counts violated defendant's constitutional right to a unanimous jury verdict. *Id.* at 169. The court stated that four jurors might believe the defendant delivered a controlled substance to one officer, four other jurors might believe he delivered it to a second officer, and four jurors might believe he delivered it to a third officer: "[t]his scenario, which is plausible given the facts of this case, permits a unanimous guilty verdict to have been rendered without all 12 jurors agreeing that defendant delivered a controlled substance to a particular recipient as set forth in each count of the indictment." *Id.* at 169-70.

¶ 51     In a more recent case, *People v. Filipiak*, 2023 IL App (3d) 220024, the defendant was charged with predatory sexual assault against two victims. The trial court gave the jury verdict forms for three counts, with counts I and III involving one victim and count II another victim. *Id.* ¶ 3. Counts I and III purportedly involved two separate acts against the first victim on the same day but in different locations; yet the verdict forms contained identical language. *Id.* ¶ 9. The jury was not instructed about differences between counts I and III or that they needed unanimity regarding the specific conduct for each count. *Id.* The jury convicted defendant of

counts I and II and acquitted on count III. *Id.* On appeal, the defendant argued that he was denied his right to a unanimous jury verdict, arguing the State's failure to distinguish between conduct alleged in counts I and III and acquittal on count III made it impossible to determine if the jury was unanimous in finding him guilty of specific conduct. *Id.* ¶ 12. The appellate court reversed the conviction on count I, finding it could not reasonably ascertain if the jury unanimously agreed whether the defendant committed either offense. *Id.* ¶ 18.

¶ 52    Advocate also cites cases from other jurisdictions, reaching similar conclusions. See, *e.g.*, *State v. Boots*, 780 P.2d 725 (Or. 1989) (*en banc*) (unanimity rule requires jurors to unanimously agree on facts required to satisfy elements of criminal code violation); *Gomez v. State*, 498 S.W.3d 691, 696 (Tex. Crim. App. 2016) (juror unanimity requires specific agreement that defendant committed same act violating criminal law statute); *Jenkins v. Commonwealth*, 496 S.W.3d 435, 448-49 (Ky. 2016) (instruction allowing jury to convict on one crime based on two separate and distinct criminal acts violating same criminal statute is "duplicitous" instruction).

¶ 53    Advocate argues that, like the defendants in *Scott* and *Filipiak*, Butts alleged Dr. Joo committed four separate acts, each of which could support a negligence claim. The trial court then instructed the jury that it need not agree on which of those acts of negligence caused Butts's injury to return a verdict in his favor. Citing *Scott* and similar cases from other jurisdictions, Advocate asserts the trial court should have instructed the jury that they must unanimously agree that at least one act or omission by Dr. Joo was negligent and the possibility the jury instead had a "patchwork" verdict requires reversal.

¶ 54    We disagree with Advocate. In *Scott* and *Filipiak* and the cases from other jurisdictions, the defendant was charged with separate and distinct criminal code violations, each with a

separate punishment. The State had to prove all elements of each violation, but the jury instructions failed to state that the jury must agree the State proved each element of each separate charge.

¶ 55 Conversely, to establish a claim for medical negligence, Butts had to prove (i) the standard of care, (ii) that Dr. Joo did not meet it, and (iii) proximate cause. The specific allegations of Dr. Joo's acts or omissions are not separate elements of the claim on which the jury must unanimously agree, provided they agree his failure to meet the standard of care caused Butts's injuries.

¶ 56 The jury's verdict indicated they unanimously agreed Dr. Joo's negligence caused Butts's brain injury. That is all the law requires. We affirm the judgment.

¶ 57 Prejudgment Interest

¶ 58 Advocate argues the statutory amendment that mandates prejudgment interest is unconstitutional because it (i) burdens a defendant's right to a jury trial, (ii) is not narrowly tailored to stated legislative purpose, (iii) violates due process by penalizing defendants for litigation delays, (iv) constitutes special legislation and violates equal protection, and (v) violates the separation of powers. Advocate also contends that the General Assembly violated the three readings rule in amending the statute and cannot constitutionally govern a cause of action that occurred before it was enacted.

¶ 59 We review Advocate's constitutional challenges to the prejudgment interest amendment *de novo*. *Kakos v. Butler*, 2016 IL 120377, ¶ 9. Statutes carry a strong presumption of constitutionality, and we construe a statute to preserve its constitutionality if reasonably possible. *Walker v. Chasteen*, 2021 IL 126086, ¶ 30. The party challenging constitutionality bears the burden of establishing the statute's invalidity. *Id.*

¶ 60                                    The Right to a Jury Trial

¶ 61        Advocate argues the prejudgment interest statute puts a prohibitive cost on a defendant's

fundamental right to a jury trial and, under strict scrutiny standard, should not be upheld unless

necessary to achieve a compelling state interest and narrowly tailored to accomplish that

interest. Advocate asserts that even if the legislature's purpose of compensating plaintiffs is

valid, the financial strain placed on defendants for exercising their right to a jury trial

constitutes an unconstitutional burden.

¶ 62        The Illinois Constitution guarantees the right to a jury trial as it existed at common law and

at the time of the 1970 constitution's adoption. Ill. Const. 1970, art. I, § 13 ("The right of trial

by jury as heretofore enjoyed shall remain inviolate."). The right to a jury trial attaches to all

rights of action known at common law, including claims for negligence, and preserves the right

to have a jury decide all facts in controversy, including damages. *Interstate Bankers Casualty

Co. v. Hernandez*, 2013 IL App (1st) 123035, ¶¶ 24-25; see also *Best v. Taylor Machine Works*,

179 Ill. 2d 367, 412 (1997) (among jury's essential functions in tort cases is determination of

damages). If a jury finds for a plaintiff on liability, it must then determine the amount of

damages that reasonably and fairly compensate the plaintiff. Illinois Pattern Jury Instructions,

Civil, No. 30.01 (approved Dec. 8, 2011) (IPI Civil No. 30.01).

¶ 63        The prejudgment interest amendment neither encroaches on a jury's calculation of damages

nor penalizes a defendant who elects a jury trial. Under the statute, if a defendant fails to make

a settlement offer within one year of a claim's filing, the trial court imposes prejudgment

interest on the entire judgment. 735 ILCS 5/2-1303(c) (West 2022). Conversely, if the jury's

verdict exceeds the highest settlement offer, prejudgment interest is calculated against the

difference. *Id.* Should a jury find for a defendant on the issue of liability, the trial court never

assesses prejudgment interest. Thus, the method by which the jury calculates damages remains unchanged. See IPI Civil No. 30.01. The jury decides the facts and awards monetary damages but has no role in calculating or awarding prejudgment interest. Indeed, calculating and awarding prejudgment interest amounts to a ministerial function for the trial court, akin to awarding costs, imposing postjudgment interest, or setting off the verdict to account for funds received from settling defendants. *Cotton v. Coccaro*, 2023 IL App (1st) 220788, ¶ 49. Because the prejudgment interest amendment does not impinge on a fundamental constitutional right, strict scrutiny does not apply. See *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983) (where government action does not impinge on fundamental right, it "need not be tested by the strict scrutiny").

¶ 64 Courts in other states faced with similar arguments have upheld their statutes as constitutional and consistent with the right to a jury trial. See *Oden v. Schwartz*, 71 A.3d 438, 456-57 (R.I. 2013) (concluding prejudgment interest statute was rationally related to legitimate state interest and did not affect right to trial by jury because prejudgment interest was not "damages"); *Galayda v. Lake Hospital Systems, Inc.*, 644 N.E.2d 298, 303 (Ohio 1994) (prejudgment interest statute "does not violate the fundamental constitutional right to trial by jury"). We find no constitutional basis for striking down the prejudgment interest statute.

¶ 65 Narrowly Tailored

¶ 66 Advocate contends the statute has not been narrowly tailored to achieve the legislative interest by allowing prejudgment interest on future damages, such as future medical care and treatment and future pain and suffering, rather than limiting compensation to what the plaintiff already incurred. Notably, Advocate cites no cases or other authority, thereby forfeiting the issue under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Even so, the argument

lacks merit. When construing a statute, our primary objective involves ascertaining and giving effect to the legislature's intent. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). In doing so, we first look at the statute's plain language. *In re Madison H*., 215 Ill. 2d 364, 372 (2005). Moreover, "we presume that the legislature, in its enactment of legislation, did not intend absurdity, inconvenience or injustice." *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006). The legislature articulated in section 2-1303(c) of the Code its intent for recovery of prejudgment interest "on all damages," including future damages. See 735 ILCS 5/2-1303(c) (West 2022). The statute is narrowly tailored to achieve that goal.

¶ 67                                   Due Process

¶ 68        Next, Advocate asserts that the prejudgment interest statute violates due process by penalizing a defendant for litigation delays, even if caused by the plaintiff.

¶ 69        The Illinois Supreme Court has stated that "assessment of interest is neither a penalty nor a bonus, but instead a preservation of the economic value of an award from diminution caused by delay*." Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 301 (1993). Regardless of the cause of the delay, in the absence of a prejudgment interest award, a defendant benefits economically from retaining those funds until judgment, and a plaintiff bears a corresponding burden from the loss of those funds. *Cotton*, 2023 IL App (1st) 220788, ¶ 58.

¶ 70        The statute limits the amount of prejudgment interest a plaintiff can receive. Further, by setting prejudgment interest at 6% and postjudgment interest at 9%, a plaintiff is incentivized to proceed with litigation expeditiously. In short, the prejudgment interest statute reflects the legislature's intent to incentivize parties to settle and prevent either from profiting by delay.

¶ 71                                    Special Legislation

¶ 72        Advocate contends that awarding prejudgment interest to personal injury and wrongful

death plaintiffs to the exclusion of other tort victims violates the prohibition on special

legislation in the Illinois Constitution. Plus, the amendment violates equal protection by

placing the corresponding burden to pay prejudgment interest on personal injury and wrongful

death defendants.

¶ 73        The special legislation clause prohibits the General Assembly from conferring special

benefits or privileges to a select group: "The General Assembly shall pass no special or local

law when a general law is or can be made applicable." Ill. Const. 1970, art. IV, § 13. We review

a special legislation challenge under the same standards applicable to an equal protection

challenge. *Best*, 179 Ill. 2d at 393. Because the challenged classifications here do not burden a

fundamental right or implicate a suspect class, we review whether they are rationally related

to a legitimate governmental interest. *Piccioli v. Board of Trustees of the Teachers' Retirement

System*, 2019 IL 122905, ¶ 20.

¶ 74        The General Assembly enacted the prejudgment interest statute to recompense tort

plaintiffs for the time value of money and incentivize settlement. Ensuring a more complete

recovery, promoting settlement, and easing the burden on crowded court dockets embrace

legitimate legislative goals. And personal injury and wrongful death claims comprise a

significant portion of the case-types, creating a backlog on civil docket. See Admin. Office of

the      Ill.      Courts,      Illinois      Courts:      Statistical      Summary—2021,      20,

https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/54868468-989e-

45f4-8bb8-c3882ed3b175/2021%20Annual%20Report%20Statistical%20Summary.pdf

[https://perma.cc/CM4G-J5U2] (statistically significant increase in number of all law cases

filed versus disposed). The General Assembly could reasonably focus reform efforts on these cases to the exclusion of other tort cases. A legislature need not choose the most comprehensive reform and often elects to enact measures piecemeal. *Anderson v. Wagner*, 79 Ill. 2d 295, 319 (1979).

¶ 75 Moreover, because a plaintiff suffers unique challenges while seeking compensation, treating personal injury and wrongful death plaintiffs differently from other litigants is reasonable. Frequently, personal injury plaintiffs have incurred life-altering damages for which prompt resolution avoids great financial hardship in addition to the injuries themselves. Wrongful conduct has violated their bodily integrity in a way victims of property or reputational torts do not suffer. These special characteristics represent a reasonable basis for the legislature to permit prejudgment interest to this class of plaintiffs. *First Midwest Bank v. Rossi*, 2023 IL App (4th) 220643, ¶ 219.

¶ 76 Separation of Powers

¶ 77 Advocate insists that the prejudgment interest statute violates the separation of powers by "intruding on the judicial sphere of authority over litigation and trial" by requiring a trial court to "mechanically" add interest to a judgment to achieve a general legislative purpose without regard to the facts of a specific case. See Ill. Const. 1970, art. II, § 1 ("The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another.").

¶ 78 The General Assembly has the authority to enact laws providing prejudgment interest. See *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 256 (2006) (" 'The recovery of interest in this State' " " 'is purely statutory.' " (quoting *Blakeslee's Storage Warehouses, Inc. v. City of Chicago*, 369 Ill. 480, 483 (1938))); *Alamo Rent A Car, Inc. v. Ryan*, 268 Ill. App.

3d 268, 277-78 (1994) (legislature, not jury, decides legal consequences of jury's factual findings). Likewise, the prejudgment interest statute does not usurp the judiciary's power because trial courts in money judgment cases lack the discretion to impose prejudgment interest absent a statutory mandate. See, *e.g.*, *Stanphill v. Ortberg*, 2020 IL App (2d) 190769, ¶ 9 (application of interest under section 2-1303 is mandatory; trial court has no discretion to refrain from imposing interest on money judgment).

¶ 79                                              Three-Readings Rule

¶ 80        Advocate argues that the General Assembly violated the Illinois Constitution's three-readings requirement. See Ill. Const. 1970, art. IV, § 8(d) ("A bill shall be read by title on three different days in each house."). The enrolled bill doctrine "provides that once the Speaker of the House of Representatives and the President of the Senate certify that the procedural requirements for passing a bill have been met, a bill is conclusively presumed to have met all procedural requirements for passage," which certification precludes judicial review. *Friends of the Parks v. Chicago Park District*, 203 Ill. 2d 312, 328-29 (2003). Advocate notes that the enrolled bill doctrine requires courts to defer to the certification of House and Senate leaders that a bill has met all procedural requirements (*Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 260 (1992)). We cannot disregard the Illinois Supreme Court's binding precedent. See *Yakich v. Aulds*, 2019 IL 123667, ¶ 13. Moreover, Advocate acknowledges it raises the issue to preserve it for appeal to the Illinois Supreme Court, which stated that "[i]f the General Assembly continues its poor record of policing itself, we reserve the right to revisit this issue on another day to decide the continued propriety of ignoring this constitutional violation" (*Geja's Cafe*, 153 Ill. 2d at 260).

¶ 81                                              Retroactive Application

¶ 82    Advocate poses that because the common law did not permit the recovery of prejudgment interest when Butts's injury occurred and his complaint filed, the statute violates its vested right to raise a defense against the imposition of prejudgment interest that it possessed, like a property interest, but that the legislature "destroyed" in enacting the statute.

¶ 83    We disagree. No one has a vested interest in a rule of law, nor is entitled to insist the law remain unchanged for their benefit. *Wingert v. Hradisky*, 2019 IL 123201, ¶ 33 (opinion of Thomas, J., joined by Karmeier, C.J., and Garman, J.). The General Assembly may change or abolish remedies without infringing on a constitutional right. *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 190, (1952) ("[N]o constitutional right is necessarily violated by changing or abolishing a remedy available at common law."). Also, Advocate's reliance on *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 98-99 (2010), is misplaced. *Lazenby* considered retroactively imposing a new legal duty on the defendant, rather than a remedial change.

¶ 84    Assuming Advocate had a vested right to avoid prejudgment interest, the statute does not apply retroactively to violate that right. Under the plain text, it applies prospectively: "For any personal injury or wrongful death occurring before the effective date of this amendatory Act ***, the prejudgment interest shall begin to accrue on the later of the date the action is filed or the effective date of this amendatory Act ***." 735 ILCS 5/2-1303(c) (West 2022).

¶ 85    Butts filed his complaint in October 2019. The statute states that he could recover prejudgment interest beginning on the statute's effective date, July 1, 2021, to the date of the judgment on September 25, 2022. Because the statute provides for prejudgment interest only in the years *after* its enactment, it does not apply retroactively.

¶ 86    Affirmed.

¶ 87    JUSTICE TAILOR, specially concurring:

¶ 88    The majority affirms the judgment against Advocate and Dr. Michael Soo-Young Joo, holding that the trial court's response to the jury's question was correct—that is, in order to find for Steven Butts, the jury need only unanimously agree that Dr. Joo was negligent, not unanimously agree that Dr. Joo was negligent in at least one of the four separate and distinct ways alleged by Butts. I agree with the majority's decision to affirm but do so on the basis that Advocate forfeited its claim of error. Therefore, I would not reach the merits of the substantive legal question Advocate raises in this appeal. I also agree with the majority's decision rejecting Advocate's constitutional challenges to the prejudgment interest statute.

¶ 89    To review, the case was tried on four allegations of negligence, each of which was alleged to have proximately caused Butts's significant brain injury. Following a jury instruction conference, the parties agreed that the jury would be instructed using Illinois Pattern Jury Instructions, Civil, No. 20.01 (revised Aug. 2023) and No. 21.02 (approved Dec. 8, 2011). The parties also agreed that the jury be instructed using Illinois Pattern Jury Instructions, Civil, No. 45.03 (approved Dec. 8, 2011), as modified, which informed the jury, in relevant part, that "[y]our verdict must be unanimous" and that the jury would only be provided two verdict forms. The jury was further instructed that it should "fill in and sign" either verdict form A, if the jury found "in favor of the Plaintiff and against Defendants," or verdict form B, if the jury found "in favor of Defendants, and against the Plaintiff." Advocate did not indicate at any time that a general verdict form was insufficient in any way or that the facts of the case required more specificity than the general verdict forms provided. Likewise, Advocate did not request special interrogatories.

¶ 90    During deliberations, the jury submitted a written question to the trial court stating: "[w]e understand that only one of the findings of negligence needs to be found in order to proceed.

Do we need unanimous agreement on any one of the findings in order to proceed?" There is no record of the discussion between the court and counsel regarding this first question. However, after the jury sent a second question, it appears that, in an attempt to make a record, the trial judge summarized his interaction with the parties. The court stated:

"And we weren't on the record at the time of the first question, and both sides stated what their position was. The plaintiff—the Court proposed an answer which was '[i]n order to proceed, you must make a unanimous decision that Dr. Joo was negligent. You do not need to be unanimous as to which one of the four possible acts constitute the negligence.'

The plaintiff agreed that I should give that answer and the defendant disagreed and said I should not give at least that answer the way I gave it."

According to Advocate's bystander's report, Advocate requested that the court "tell the jury to read the jury instructions."

¶ 91    The jury's second question stated:

"We have no unanimity as to any of the four findings that Dr. Joo was negligent. We have a split decision as to one of the counts. We have a majority decision as to one of the counts. We are unanimous that on two of the counts that Dr. Joo was not negligent. With the majority vote on one, do we proceed?"

The trial court proposed telling the jurors they should refer to its answer to their first question as well as the written jury instructions. Advocate's counsel stated that "the proper answer would be please refer to the jury instructions only. That's my recommendation." Butts's counsel disagreed and stated that the court should "tell them about the previous answer to the previous question and this is in follow up." The court noted the disagreement between the

parties on how it should answer the second question and then answered the question as follows: "[t]he answer to your 'follow up' question is this: 'Please refer to my answer to your first question along with the written jury instructions I have given you.' " Neither party objected to the court's ultimate answer. Shortly thereafter, the jury returned a general verdict for Butts and against Advocate.

¶ 92        Advocate argues that the trial court's answers to the jury's questions were wrong as a matter of law and violated its constitutional right to juror unanimity. Specifically, Advocate faults the trial court for improperly instructing the jury that it must unanimously agree that Dr. Joo was negligent, but that it need not unanimously find against Dr. Joo on any single act of alleged negligence.

¶ 93        Insomuch as Advocate now attempts to argue that the court should have answered the jury's question in a way that Advocate did not propose, I would find these arguments forfeited. See *Koehler v. Neighbors*, 322 Ill. App. 3d 440, 448 (2001). The only answer that Advocate put forward to the jury's questions—refer to the instructions that were already given—was no answer at all because those instructions are silent on the jury's legal question. *Id.* ("Allowing the jury to stand on the original instructions when faced with a direct question on a legal matter is clearly contrary to the law of the State of Illinois."). Indeed, by urging the court to answer the jury's question by referring it to the pattern instructions that were already given, instructions which do not answer the question of law identified by the jury, Advocate effectively told the court that it should not answer the jury's question. Only belatedly in its post-trial motion and now on appeal does Advocate contend that the court should have instructed the jury that it was required to unanimously find that Dr. Joo was negligent in at least one of the four ways asserted by Butts. "[I]t is fundamental to our adversarial process that

a party forfeits his right to complain of an error where to do so would be inconsistent with the position taken by that party in an earlier court proceeding." *Givens v. City of Chicago*, 2023 IL 127837, ¶ 77.

¶ 94 This court has gone so far as to require parties to submit specific written responses to jury questions proposed during deliberations, reasoning that "in the midst of jury deliberations after a vigorously contested trial, a question from the jury deserves as much—if not more— thoughtful consideration as did the original instructions." *Van Winkle v. Owens-Corning Fiberglass Corp.*, 291 Ill. App. 3d 165, 173-74 (1997) (citing Illinois Supreme Court Rule 239(c) (134 Ill. 2d R. 239(c)). I may not go so far as to require a written proposed response to a jury question in every case, but if a party objects to the court's answer to the jury's question, then counsel must at the very least offer its proposed answer orally, and on the record, to properly preserve the issue for appeal. See *Koehler*, 322 Ill. App. 3d at 448 ("If the parties disagree with the trial court's proposed method of dealing with a jury question, then the objecting party needs to make the appropriate suggestion. The situation is really no different from when a party complains on an appeal that the trial court should have given an instruction to the jury and that instruction was never proposed by the complaining party. No relief is warranted in that situation."); *Cf. Cipolla v. Village of Oak Lawn,* 2015 IL App (1st) 132228, ¶¶ 28-29 (rejecting forfeiture argument when party's counsel orally made of record his preferred answer to a jury question).

¶ 95 Advocate alternatively asks that we reach the merits because forfeiture only binds the parties, not the court. *Maniez v. Citibank*, *F.S.B.*, 404 Ill. App. 3d 941, 948 (2010). I see no good reason not to honor Advocate's forfeiture, particularly where it consistently failed throughout the trial to raise the legal issue it now presses on appeal. As the majority points out,

Advocate consented to a general verdict by agreeing to the jury instructions and verdicts forms as given and by failing to request special interrogatories. See *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) ("A party cannot complain of error which he induced the court to make or to which he consented."). If a party does not object to jury instructions or verdict forms at trial, any objections are forfeited on appeal. *Compton v. Ubilluz*, 353 Ill. App. 3d 863, 869 (2004); see also *Christopherson v. St. Vincent Hospital*, 384 P.3d 1098, 1108 (N.M. Ct. App. 2016) ("[U]nder the general verdict rule, we assume that all seven theories of negligence are supported by the evidence and that the *** jury's verdict therefore could validly rest on any one (or more) of those bases."); *Dillard v. Texas Electric Cooperative*, 157 S.W.3d 429, 434 (Tx. 2005) ("Under broad-form submission rules, jurors need not agree on every detail of what occurred so long as they agree on the legally relevant result. Thus, jurors may agree that a defendant failed to follow approved safety practices without deciding each reason that the defendant may have failed to do so. [Citation.] Similarly, the jurors here could have unanimously found Bumstead negligent, even if half believed the negligent act was overloading his truck and half believed it was failing to warn oncoming traffic—acts that preceded two different collisions."). And then when confronted by the jury's binary questions, Advocate balked by urging the court to refer the jury to the IPI instructions already given. Thus, the court's answers to the jury's questions were based on the very instructions and verdict forms that Advocate agreed to.

¶ 96    Moreover, we should honor Advocate's forfeiture because the answer to the question is likely to have a cascade effect on jury deliberations that we have not been able to consider. To be sure, the level of jury specificity that is required will potentially affect other types of claims or defenses alleging multiple allegations of negligence, including, for example, cases where a

defendant asserts contributory negligence or affirmative defenses against a plaintiff or where a defendant seeks contribution from a co-defendant or a third-party defendant. And the level of jury specificity could affect cases involving multiple plaintiffs or multiple defendants.

¶ 97    I express no opinion on the merits of whether the principle of jury unanimity requires that, in order to find for a plaintiff who alleges multiple acts or omissions of negligence, each of which proximately caused his injury, the jury must unanimously find that the defendant committed at least one act or omission of negligence. Compare *Christopherson*, 384 P.3d at 1105-08 (jury need only unanimously agree that doctor was negligent, not unanimously agree that he was negligent in at least one of the seven ways alleged by plaintiff), with Elizabeth A. Larsen, *Specificity and Juror Agreement in Civil Cases*, 69 U. Chi. L. Rev. 379 (2002) (advocating that juries be required to agree on specific facts).